UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD,

Plaintiffs,

v.

ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC.,

Defendants.

Case. No. 1:06-cv-00486-ML-DLM

**DEFENDANT MEDOPTIONS' OBJECTIONS TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Defendant MedOptions Inc. ("MedOptions") hereby objects to Plaintiffs' Motions to Compel More Responsive Answers to Interrogatories and More Responsive Answers to Requests for Production. As grounds for this Objection, MedOptions relies on the Memorandum of Law filed herewith.

Respectfully submitted,

DEFENDANTS,
ANN TAMULE a/k/a/ ANN M. SULLIVAN,
ALIAS, and MEDOPTIONS, INC.,

By their Attorneys,

//s// Christine K. Bush
Christine K. Bush (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cbush@duffysweeney.com

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: December 3, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within Defendant MedOptions' Objections to Plaintiffs' Motion to Compel Further Responses to Interrogatories and Requests for Production was filed through the ECF system on this 3rd day of December, 2007 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

//s// Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\MedOptions Obj to Motions to Compel.DOC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS,<br>LTD, dba GERICARE, and<br>RONALD MARK STEWART MD,<br><br>Plaintiffs,<br>v.<br><br>ANN TAMULE, aka,<br>ANN M. SULLIVAN, alias, and<br>MEDOPTIONS INC.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case. No. 1:06-cv-00486-ML-DLM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MEDOPTIONS' OBJECTIONS TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Plaintiffs Human Services Consultants, Ltd. d/b/a GeriCare ("GeriCare") and Ronald Mark Stewart, M.D. ("Stewart") (collectively "plaintiffs") seek further responses to certain interrogatories and document requests propounded to defendant MedOptions, Inc. ("MedOptions") in the above-referenced case. As demonstrated below, to the extent MedOptions has not already responded in full to the discovery demands at issue, its objections on grounds of relevance, over breadth and undue burden are well founded. Plaintiffs' motion should therefore be denied in its entirety.

## I. Background

This case has its genesis in MedOptions' hiring of co-defendant Ann Sullivan ("Sullivan") effective June 1, 2006.[1] Before joining MedOptions, Sullivan had been employed, for several years, by GeriCare as a nurse practitioner. At GeriCare, and at MedOptions as well, Sullivan was generally responsible for conducting psychological

[1] MedOptions and Sullivan are collectively referred to as "defendants."

evaluations and assessments of nursing home residents referred to her employer by the facility. (Sullivan Dep. at pp. 34, 82; relevant excerpts of the Sullivan Dep. are attached hereto as Exhibit A).

As a condition of her employment by GeriCare, Sullivan was required to sign a Provider Agreement containing a broad six-month non-competition covenant barring Sullivan from working for a competing enterprise; the covenant is not geographically restricted. At GeriCare's insistence, Sullivan executed a new Provider Agreement in June 2004 containing the same restrictive covenants. (Sullivan Dep. at pp. 32-33, Exh. 3). By letter dated April 9, 2006, Sullivan advised Stewart that she was resigning from GeriCare as of June 1, 2006. (Sullivan Dep. Exh. 5).

Just over a week later, on April 19, 2006, Stewart unilaterally notified each of the facilities Sullivan had been serving that GeriCare was terminating their service contract effective June 1, 2006. GeriCare cited an inability to hire a replacement for Sullivan as the reason for taking this drastic action. (See Exhibit B). By all indications, however, GeriCare made little or no attempt to recruit a nurse practitioner to fill Sullivan's spot in the ten days or so between learning of Sullivan's decision to resign and issuing notice to the nursing homes that it was terminating their contracts.

Upon hiring Sullivan, MedOptions initially assigned her to cover a pair of Rhode Island facilities not previously serviced by GeriCare. Eventually, however, MedOptions secured service contracts with a number of the nursing homes that had been abandoned by GeriCare and, logically, assigned Sullivan to those facilities. (Sullivan Dep. at pp. 80-83). As it turned out, these assignments were short-lived because in November 2006, Sullivan, who had been planning to pursue a religious life, received notice that she had

been accepted into a convent located in New Britain, Connecticut. At Sullivan's request, MedOptions transferred Sullivan to Connecticut in January 2007, and assigned her responsibility for two nursing homes in the New Britain vicinity. Sullivan remained at MedOptions and worked a part-time schedule until June 2007, when she entered the convent on a permanent basis. (Sullivan Dep. at pp. 111-14).

In this diversity suit, plaintiffs contend that Sullivan's employment by MedOptions constitutes a breach of the non-competition covenant, and further accuse both MedOptions and Sullivan of tortiously interfering with plaintiffs' contractual relationships and business expectancies. More specifically, plaintiffs assert that even though, within a matter of moments after learning that Sullivan would be moving on, they volitionally terminated their service contracts with each and every facility to which Sullivan had been assigned, MedOptions somehow interfered with these *past* relationships by taking over for GeriCare, and Sullivan somehow engaged in improper competition by accepting her employer's assignment to service the facilities GeriCare had forsaken.

## II. Scope of Discovery

Generally speaking, "[d]iscovery is available to obtain any non-privileged matter 'that is relevant to the claim or defense of any party.' In addition, 'for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.' The advisory committee notes to the 2000 amendment of Rule 26(b)(1) explain that concern had arisen about the scope of discovery under the broad 'subject matter' language and that the Committee decided not to eliminate that language but to limit its application by requiring more management of discovery by the court." Gill v.

Gulfstream Park Racing Association, 2005 WL 1711119, at *3 (D.N.H. July 21, 2005)(Citations and alterations omitted).

Hence, "[a] district court's control over discovery has been enhanced since the changes in the Federal Rules of Civil Procedure in 2000. The Rules were amended to involve the court more actively in regulating the breadth of sweeping or contentious discovery. In particular, the new rules limit the breadth of discovery that can occur absent court approval. Under Rule 26(b)(1), for example, discovery must relate more directly to a claim or defense than it did previously, and if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved." Sallis v. University of Minnesota, 408 F.3d 470, 477-78 (8th Cir. 2005)(Citations and internal quotation marks omitted).

Significantly, moreover, "discovery may be limited in its scope where the Court determines that 'the burden or expense of the proposed discovery outweighs its likely benefit.' Further, 'the party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" Daniels v. American Power Conversion Corp., 2007 WL 539643, at *1 (D.R.I. Feb. 15, 2007)(Citations omitted). As to the interrogatories and document requests at issue, plaintiffs have clearly failed to meet that burden.

**III. Discovery in Dispute**

Plaintiffs seek further responses to Interrogatory Nos. 2, 3, 4, 6, 7, 10, 11, 13 and 15, and Document Request Nos. 1, 5, 6 and 7. These discovery demands are addressed in turn, beginning with the interrogatories.

**Interrogatory No. 2**

This interrogatory seeks detailed information regarding all facilities and/or patients serviced by Sullivan on behalf of MedOptions, including "the names, addresses, and telephone numbers" of the facilities and/or patients, the dates of service, the nature of the services provided, and the revenues generated for Sullivan and/or MedOptions. Subject to objections on relevance, confidentiality and resident privacy grounds, MedOptions identified each of the Rhode Island nursing homes serviced by Sullivan during her tenure at MedOptions, the contract start date, and Sullivan's end date (i.e., when she transferred to Connecticut). Plaintiffs inexplicably demand more, but without justification.

Even though it is plaintiffs' "affirmative duty to set forth sufficient allegations as to the relevance of the discovery" sought, they "do[] not expound in the least on how and why the information requested ... is relevant." Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co., 2005 WL 783076, at *2 (D.P.R. April 4, 2005). Indeed, plaintiffs offer literally no explanation as to how the additional minutiae sought by way of this interrogatory could possibly shed light on the claims and defenses alleged in the case *sub judice*; instead they simply identify the information not provided by MedOptions and leave it at that.

"While Rule 26(b)(1) provides for broad discovery, under the new language 'courts should not grant discovery requests based on pure speculation that amounts to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses.'" Id. (Citation omitted). Details concerning each of Sullivan's visits with residents of the nursing homes she was assigned to cover for

MedOptions can add absolutely nothing about whether the non-competition agreement GeriCare required Sullivan to sign is enforceable or has been breached, nor does it speak to whether defendants employed tortious means to procure contracts with the facilities GeriCare deserted.

The information is irrelevant and intrusive, and therefore non-discoverable.

**Interrogatory No. 3**

By way of Interrogatory No. 3, plaintiffs seek to discover information concerning any type of "civil, criminal, or administrative action" to which MedOptions, including its directors and officers, has been a party. The interrogatory is unbounded in time and scope so as to encompass legal proceedings "of any kind ... includ[ing] landlord-tenant, divorces and dog bites. The request is patently overbroad." Benham v. Rice, 238 F.R.D. 15, 19 (D.D.C. 2006)(discussing interrogatory number 3).[2]

**Interrogatory No. 4**

Interrogatory No. 4 requests information concerning communications between Sullivan and MedOptions on the subject of her employment. MedOptions responded by describing its initial contact with, and interviews of, Sullivan. To the extent Sullivan could recall further details, she provided this information at her deposition. Yet, plaintiffs inexplicably demand that MedOptions repeat these same details in writing.

"There is, however, no obligation to provide supplemental or corrective information that has otherwise been made known to the parties in writing or during the discovery process ..." Advisory Committee Notes for 1993 Amendments to Fed. R. Civ. P. 26(e). On this basis alone, plaintiffs' motion to compel a further response to

[2] In Benham, the court articulated its ruling on defendant's objections to each item of discovery at issue on a chart. The parenthetical following the case citation specifies the discovery ruling relied upon by MedOptions for the proposition stated.

Interrogatory No. 4 must be denied. Harding v. Cianbro Corp., 436 F. Supp. 2d 153, 163 n.19 (D. Me. 2006)(where individual with discoverable information was disclosed during deposition, "Defendant was not required to supplement its initial disclosures or answers to interrogatories ...").

Besides, sweeping interrogatories, like Interrogatory No. 4, that request information on a broad topic, such as one's "employment," without meaningful limits are inherently overbroad and unduly burdensome. For this reason as well, MedOptions' objection to Interrogatory No. 4 is well-founded and should be sustained. See, e.g., Daniels, at *3 (denying motion to compel responses to similarly broad interrogatories).

**Interrogatory Nos. 6 and 7**

In support of their motion to compel a further response to Interrogatory Nos. 6 and 7, plaintiffs assert "that communications regarding solicitations to the nursing homes and discussions leading up to a contract are clearly relevant to this action for interference with business relationships" and "the claims against the Defendants regarding the breach of Defendant Sullivan's non-compete agreement." As to this point, MedOptions has no quarrel. But the interrogatories in question are not nearly so confined.

Rather, in Interrogatory No. 7 plaintiffs ask MedOptions to provide comprehensive detailed information about *every* communication Sullivan, or anyone else associated with MedOptions, had with representatives of eight nursing homes at any time on any subject matter. Interrogatory No. 6, seeking the same details regarding communications relative to MedOptions' and/or Sullivan's provision of services to these nursing homes, is effectively a duplicate of Interrogatory No. 7 since every interaction

defendants had with these facilities during the operative time period related in one way or another to the services provided by MedOptions.

"A demand for all communications pertaining to plaintiff's ... complaint irrespective of the nature, time and purpose of the communication is patently overbroad." Benham, 238 F.R.D. at 26 (discussing interrogatory number 19). Plaintiffs offer no explanation as to why they need to know about every single communication MedOptions and Sullivan had with the nursing homes formerly serviced by GeriCare, as opposed to just those, if any, pertaining to the procurement of a service contract by MedOptions, and none is apparent.[3] A simple self-serving pronouncement of relevance is plainly insufficient to meet the burden imposed by Fed. R. Civ. P. 26(b) on a party seeking discovery. See Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)("Beyond Caouette's charge that full answers to the interrogatories 'would provide the needed evidence or proof of wrongdoing,' he offers no explanation how the data he seeks but has not received bears any relevance to this matter. His 'motion for relief' is denied to the extent it seeks to compel interrogatory answers.").

Indeed, "[i]f this Court permitted discovery on this flimsy showing, then Plaintiff[s] would be entitled to limitless discovery regarding communications between [defendants] and any past or current business associate. Such a fishing expedition is not permitted under Fed. R. Civ. P. 26(b)(1)." Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC, 2007 WL 674893, at *2 (D.R.I. March 1, 2007).

[3] To be sure, Sullivan had no involvement in MedOptions' procurement of service contracts with any former GeriCare account; she was simply assigned to those nursing homes by MedOptions. (Sullivan Dep. at p. 83).

**Interrogatory No. 10**

MedOptions responded to this interrogatory, seeking intricate details concerning the timing and extent of MedOptions' knowledge about the existence and contents of the non-competition agreement at issue in this case, by explaining that on or about September 11, 2006, Sullivan provided a copy of the Provider Agreement to MedOptions; the particular person to whom Sullivan gave the agreement could not be identified with precision. Sullivan elaborated as best she could at her deposition, detailing several discussions with MedOptions personnel regarding the agreement, but she did not recall when she provided MedOptions with a copy, or to whom it was provided. (See Sullivan Dep. at pp. 104-05). Plaintiffs have therefore exhausted defendants' full knowledge as to the subject matter of Interrogatory No. 10; there is nothing further to disclose.

**Interrogatory No. 11**

Interrogatory No. 11 seeks contact information regarding "any company processing [MedOptions'] claims for payment from any insurer." Plaintiffs contend such information is relevant because "[t]he damages to Plaintiffs were largely in the form of patient revenues derived from insurers" and "information regarding the entities processing such claims are germane to the calculation of damages."

This theory of relevance, however, is completely misguided for the simple reason that the economic damages potentially recoverable by plaintiffs in this action would be based on plaintiffs' lost profits, not defendants' gains, to which this interrogatory is directed. Home Gas Corp. of Massachusetts, Inc. v. DeBlois Oil Co., 691 F. Supp. 567, 578 (D.R.I. 1987), citing Abbey Medical/Abbey Rents, Inc. v. Mignacca, 471 A.2d 189, 195 (R.I. 1984); Long v. Atlantic PBS, Inc., 681 A.2d 249, 252 (R.I. 1996).

Because plaintiffs purport to seek information pertaining to revenues generated by MedOptions in furtherance of their claim for damages, and such information is, as a matter of settled law, irrelevant thereto, plaintiffs' motion to compel a response to Interrogatory No. 11 must be denied. See Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 2006 WL 3025985, at *4 (D.R.I. Oct. 23, 2006)(denying motion to compel where discovery sought did not bear on legal issues at stake).

**Interrogatory No. 13**

By way of Interrogatory No. 13, plaintiffs seek the identity of all persons with knowledge of matters pertaining to this case as well as details concerning the particulars of that knowledge. In response, MedOptions objected to the extent the interrogatory calls for privileged communications with counsel but, subject to that objection, referred plaintiffs to defendants' initial disclosures. MedOptions has no obligation to provide anything further. The motion to compel should therefore be denied. Moses v. Halstead, 236 F.R.D. 667, 672-73 (D. Kan. 2006)(denying motion to compel response to interrogatory seeking identity of all persons with "knowledge concerning any of the issues raised by the pleadings" and the "subject matter" of such knowledge on the ground that defendant "has already provided in its Rule 26(a)(1) disclosures the names, telephone numbers and addresses of the individuals who are likely to have discoverable information that [defendant] may use to support its claims or defenses, ...").

**Interrogatory No. 15**

MedOptions objected on relevance grounds to this interrogatory seeking the identity of any persons or entity who investigated, to any extent, plaintiffs or matters pertaining to this lawsuit, but nevertheless responded, "none other than MedOptions'

counsel in connection with the defense of this lawsuit." Plaintiffs ask the Court to compel a "responsive answer" and challenge MedOptions' objection, claiming the interrogatory "does not seek privileged information, but factual information." MedOptions, however, did not assert a privilege objection, and in fact provided a complete response; plaintiffs' motion to compel is therefore baseless.

**Document Request No. 1**

This request seeks the "complete contents of any personnel file maintained by Defendant MedOptions with respect to Defendant Sullivan." MedOptions objected on relevance and privacy grounds, to which plaintiffs respond that "the personnel information contained in said file (dates of interview, applications, hire) are germane to determining whether Defendants conspired to divert GeriCare's clients, and when that conspiracy was established."

Plaintiffs, however, do not confine their request to these ostensibly relevant portions of any such personnel file; instead they ask for everything contained therein without regard to subject matter. To be sure, MedOptions has produced Sullivan's offer letter setting forth the terms of her employment and establishing the date of hire as well as other documents pertaining to, *inter alia*, Sullivan's work assignments and her transfer to Connecticut. Plaintiffs do not even attempt to explain the relevance of anything else that may be included in Sullivan's personnel file, including benefits information, personal data and the like.

"Even in Title VII cases and other employment discrimination cases, courts have not given unfettered access to personnel records. As well, before such documents are compelled, the party seeking them must show that the information in the files is relevant

and if the relevant information can be obtained through less intrusive means, then personnel files will not be produced." Purkey v. Rubino, 2006 WL 3497267, at *6 (D. Idaho Dec. 4, 2006)(Citations omitted). To the extent MedOptions possesses any relevant documents responsive to Document Request No. 1 they have been produced; moreover, apart from the documents turned over by MedOptions, the information plaintiffs claim to seek by way of this request was fully addressed by Sullivan at her deposition.

Because "[p]laintiff[s] ha[ve] not established the relevance of production of [Sullivan's] complete personnel file[] ...," the motion to compel must be denied. Daniels, at *2.

**Document Request Nos. 5 and 6**

These sweeping requests are a companion to Interrogatory Nos. 6 and 7 and suffer from the same infirmity, namely over breadth.

To be specific, Document Request No. 6 asks MedOptions to produce documents memorializing *every* communication between anyone associated with MedOptions and a representative of any of eight nursing homes. Document Request No. 5, seeking all documents reflecting communications relative to MedOptions' and/or Sullivan's provision of services to these nursing homes, is effectively a duplicate of Document Request No. 6 since every written exchange defendants had with these facilities during the operative time period related in one way or another to the services provided by MedOptions. Both requests, like the interrogatories, are unbounded in time.

"All correspondence, irrespective of subject matter, would necessarily require the production of documents that have nothing to do with this case." Benham, 238 F.R.D. at

19 (discussing document request number 16). The requests are therefore overbroad and the motion to compel must be denied.[4]

**Document Request No. 7**

Document Request No. 7 seeks, at a minimum, "patient log sheets, explanation of benefits from insurance companies, and billing statements for patients serviced by Defendant Sullivan." Responding to MedOptions' objections on relevance and privacy grounds, plaintiffs argue that "information regarding the services are germane to the calculation of damages," but, as demonstrated above in regard to Interrogatory No. 11, plaintiffs' damages are based on its lost profits, hence documents reflecting services rendered and revenues generated by MedOptions is, by definition, irrelevant.

Plaintiffs' further contention that "documentation regarding Defendant's start dates are germane to the claims against [Sullivan] for breach of contract" is confounding given that MedOptions produced all of its service contracts with former GeriCare accounts, and even created a document specifying the date on which MedOptions commenced servicing of these facilities. This is perhaps the starkest illustration of the utter lack of good faith underlying plaintiffs' motion.

## IV. <u>Conclusion</u>

For the foregoing reasons, plaintiffs' motion to compel should be denied in its entirety.

---

[4] By no means have defendants been obstructionist. MedOptions provided plaintiffs with copies of the service contracts it entered into with each and every facility previously serviced by GeriCare. It is difficult to decipher why plaintiffs would need anything further; they make no attempt at an explanation.

Respectfully submitted,

DEFENDANTS,
ANN TAMULE a/k/a/ ANN M. SULLIVAN,
ALIAS, and MEDOPTIONS, INC.,

By their Attorneys,

//s// Christine K. Bush
Christine K. Bush (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cbush@duffysweeney.com

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: December 3, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within Memorandum of Law in Support of Defendant MedOptions' Objections to Plaintiffs' Motion to Compel Further Responses to Interrogatories and Requests for Production was filed through the ECF system on this 3rd day of December, 2007 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

//s// Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\Mem in Support MedOptions Obj to Motions to Compel.DOC