**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD, | : | Case. No. 1:06-cv-00486-ML-DLM |
| Plaintiffs, | : | |
| v. | : | |
| ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC., | : | |
| Defendants. | : | |

**DEFENDANT ANN SULLIVAN'S OBJECTIONS TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Defendant Ann Sullivan ("Sullivan") hereby objects to Plaintiffs' Motions to Compel More Responsive Answers to Interrogatories and More Responsive Answers to Requests for Production. As grounds for this Objection, Sullivan relies on the Memorandum of Law filed herewith.

Respectfully submitted,

DEFENDANTS,
ANN TAMULE a/k/a/ ANN M. SULLIVAN,
ALIAS, and MEDOPTIONS, INC.,

By their Attorneys,

/s/ Christine K. Bush
Christine K. Bush (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cbush@duffysweeney.com

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: December 3, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within Defendant Ann Sullivan's Objections to Plaintiffs' Motion to Compel Further Responses to Interrogatories and Requests for Production was filed through the ECF system on this 3rd day of December, 2007 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

/s/ Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\MedOptions Obj to Motions to Compel.DOC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD, | : | Case. No. 1:06-cv-00486-ML-DLM |
| Plaintiffs, | : | |
| v. | : | |
| ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC., | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SULLIVAN'S OBJECTIONS TO PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Plaintiffs Human Services Consultants, Ltd. d/b/a GeriCare ("GeriCare") and Ronald Mark Stewart, M.D. ("Stewart") (collectively "plaintiffs") seek further responses to certain interrogatories and document requests propounded to defendant Ann Sullivan ("Sullivan") in the above-referenced case. As demonstrated below, to the extent Sullivan has not already responded in full to the discovery demands at issue, her objections on grounds of relevance, over breadth and undue burden are well founded. Plaintiffs' motion should therefore be denied in its entirety.

## I. Background

GeriCare employed Sullivan as a nurse practitioner from June 2002 until her voluntary resignation effective June 1, 2006. In this capacity, Sullivan was generally responsible for conducting psychological evaluations and assessments of nursing home residents at various facilities serviced by GeriCare in Rhode Island. (Sullivan Dep. at p. 34; relevant excerpts of the Sullivan Dep. are attached hereto as Exhibit A).

As a condition of her employment by GeriCare, Sullivan was required to sign a Provider Agreement containing a broad six-month non-competition covenant barring Sullivan from working for a competing enterprise; the covenant is not geographically restricted. At GeriCare's insistence, Sullivan executed a new Provider Agreement in June 2004 whereby her compensation arrangement was modified (to her detriment); the restrictive covenants, however, were unaltered. (See Sullivan Dep. at pp. 32-33, Exh. 3).

In late March or early April 2006, the director of nursing for one of the facilities serviced by Sullivan on behalf of GeriCare advised Sullivan that the home would be terminating its contract with GeriCare. By way of explanation, the nursing director stated that she was quite pleased with Sullivan's performance but was suspicious of possible Medicare fraud on the part of Stewart. According to the nursing director, Stewart had submitted paperwork from Florida for services rendered on a date when nobody in the facility saw him and, more importantly, documenting a supposed visit with at least one patient who was not a resident of the facility at the time. (Sullivan Dep. at pp. 43-45).

Concerned about being implicated in a potentially fraudulent scheme, and having already decided to leave the private sector and pursue a religious life, by letter dated April 9, 2006, Sullivan advised Stewart that she was resigning from GeriCare as of June 1, 2006. Sullivan provided some seven weeks notice of her intention to resign because she was aware of the difficulty GeriCare would have finding a qualified replacement, particularly in view of the fact that GeriCare does not provide health insurance benefits. (Sullivan Dep. at pp. 43, 57-59, Exh. 5).

Within a matter of days after learning that Sullivan would be resigning, on April 19, 2006, Stewart unilaterally notified each of the facilities Sullivan had been serving that

GeriCare was terminating their service contract effective June 1, 2006. GeriCare cited an inability to hire a replacement for Sullivan as the reason for taking this drastic action. (See Exhibit B). By all indications, however, GeriCare made little or no attempt to recruit a nurse practitioner to fill Sullivan's spot in the week or so between learning of Sullivan's decision to resign and issuing notice to the nursing homes that it was terminating their contracts.

Meanwhile, Sullivan's plan to enter religious life hit some roadblocks and, as a result, she found it necessary to pursue employment elsewhere until such time as she was able to join a convent whose mission comported with her spiritual objectives. This job search initiative quickly led Sullivan to MedOptions, Inc. ("MedOptions"),[1] by whom she was hired on June 1, 2006. Initially, MedOptions assigned Sullivan to a pair of Rhode Island facilities not previously serviced by GeriCare. Eventually, however, MedOptions secured service contracts with a number of the nursing homes that had been abandoned by GeriCare and, logically, assigned Sullivan to those facilities. (Sullivan Dep. at pp. 80-83).

In November 2006, Sullivan received notice that she had been accepted into a convent located in New Britain, Connecticut where, consistent with her calling, she would be able to utilize her skills and experience as a nurse in furtherance of a charitable mission. To facilitate her transition, Sullivan requested a reassignment to facilities in the New Britain area and a reduction in hours. MedOptions obliged, transferring Sullivan to Connecticut in January 2007 and assigning her responsibility for two nursing homes. Sullivan remained at MedOptions and worked a part-time schedule until June 2007, when she entered the convent on a permanent basis. (Sullivan Dep. at pp. 111-14).

[1] Sullivan and MedOptions are collectively referred to as "defendants."

Meanwhile, in October 2006, plaintiffs brought suit against Sullivan and MedOptions in State court alleging common law claims for breach of contract against Sullivan and tortious interference with contractual relationships and business expectancies against both Sullivan and MedOptions. The case was timely removed to federal court on the basis of diversity of citizenship.

In a nutshell, plaintiffs contend that even though, within a matter of moments after learning that Sullivan would be moving on, GeriCare volitionally terminated its service contracts with each and every facility to which Sullivan had been assigned, MedOptions somehow interfered with these *past* relationships by eventually taking over for GeriCare at certain of these nursing homes, and Sullivan somehow engaged in improper competition by accepting her employer's assignment to service the facilities GeriCare had forsaken.

## II. Scope of Discovery

Generally speaking, "[d]iscovery is available to obtain any non-privileged matter 'that is relevant to the claim or defense of any party.' In addition, 'for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.' The advisory committee notes to the 2000 amendment of Rule 26(b)(1) explain that concern had arisen about the scope of discovery under the broad 'subject matter' language and that the Committee decided not to eliminate that language but to limit its application by requiring more management of discovery by the court." Gill v. Gulfstream Park Racing Association, 2005 WL 1711119, at *3 (D.N.H. July 21, 2005)(Citations and alterations omitted).

Hence, "[a] district court's control over discovery has been enhanced since the changes in the Federal Rules of Civil Procedure in 2000. The Rules were amended to involve the court more actively in regulating the breadth of sweeping or contentious discovery. In particular, the new rules limit the breadth of discovery that can occur absent court approval. Under Rule 26(b)(1), for example, discovery must relate more directly to a claim or defense than it did previously, and if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved." Sallis v. University of Minnesota, 408 F.3d 470, 477-78 (8th Cir. 2005)(Citations and internal quotation marks omitted).

Significantly, moreover, "discovery may be limited in its scope where the Court determines that 'the burden or expense of the proposed discovery outweighs its likely benefit.' Further, 'the party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" Daniels v. American Power Conversion Corp., 2007 WL 539643, at *1 (D.R.I. Feb. 15, 2007)(Citations omitted). As to the interrogatories and document requests at issue, plaintiffs have clearly failed to meet that burden.

**III. Discovery in Dispute**

Plaintiffs seek further responses to Interrogatory Nos. 2, 3, 4, 6, 7, 9, 10, 11, 14 and 16, and Document Request Nos. 2, 10, 11, and 12. These discovery demands are addressed in turn, beginning with the interrogatories.

**Interrogatory No. 2**

This interrogatory seeks detailed information regarding all facilities and/or patients serviced by Sullivan on behalf of MedOptions, including "the names, addresses,

and telephone numbers" of the facilities and/or patients, the dates of service, the nature of the services provided, and the revenues generated for Sullivan and/or MedOptions. Subject to objections on relevance, confidentiality and resident privacy grounds, Sullivan (or MedOptions) identified each of the Rhode Island nursing homes serviced by Sullivan during her tenure at MedOptions, the contract start date, and Sullivan's end date (i.e., when she transferred to Connecticut). Plaintiffs inexplicably demand more, but without justification.

Even though it is plaintiffs' "affirmative duty to set forth sufficient allegations as to the relevance of the discovery" sought, they "do[] not expound in the least on how and why the information requested ... is relevant." Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co., 2005 WL 783076, at *2 (D.P.R. April 4, 2005). Indeed, plaintiffs offer literally no explanation as to how the additional minutiae sought by way of this interrogatory could possibly shed light on the claims and defenses alleged in the case *sub judice*; instead they simply identify the information not provided by Sullivan and leave it at that.

"While Rule 26(b)(1) provides for broad discovery, under the new language 'courts should not grant discovery requests based on pure speculation that amounts to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses.'" Id. (Citation omitted). Details concerning each of Sullivan's visits with residents of the nursing homes she was assigned to cover for MedOptions over a six-month span can add absolutely nothing about whether the non-competition agreement GeriCare required Sullivan to sign is enforceable or has been

breached, nor does it speak to whether defendants employed tortious means to procure contracts with the facilities GeriCare deserted.

The information is irrelevant and needlessly intrusive, and therefore non-discoverable.

**Interrogatory No. 3**

By way of Interrogatory No. 3, plaintiffs seek to discover information concerning any type of "civil, criminal, or administrative action" to which Sullivan has been a party. The interrogatory is unbounded in time and scope so as to encompass legal proceedings "of any kind ... includ[ing] landlord-tenant, divorces and dog bites. The request is patently overbroad." Benham v. Rice, 238 F.R.D. 15, 19 (D.D.C. 2006)(discussing interrogatory number 3).[2] That plaintiffs criticize Sullivan for neglecting to disclose an automobile accident lawsuit dating back over a decade serves only to hammer home the point. (Sullivan Dep. at pp. 10-11).

**Interrogatory No. 4**

Interrogatory No. 4 requests information concerning communications between Sullivan and MedOptions on the subject of her employment. Sullivan responded by describing her initial contact and interviews with MedOptions. To the extent Sullivan could recall further details, she provided this information at her deposition. Yet, plaintiffs inexplicably demand that Sullivan repeat these same details in writing.

"There is, however, no obligation to provide supplemental or corrective information that has otherwise been made known to the parties in writing or during the discovery process ..." Advisory Committee Notes for 1993 Amendments to Fed. R. Civ.

---

[2] In Benham, the court articulated its ruling on defendant's objections to each item of discovery at issue on a chart. The parenthetical following the case citation above specifies the discovery ruling relied upon by Sullivan for the proposition stated.

P. 26(e). On this basis alone, plaintiffs' motion to compel a further response to Interrogatory No. 4 must be denied. Harding v. Cianbro Corp., 436 F. Supp. 2d 153, 163 n.19 (D. Me. 2006)(where identity of individual with discoverable information was disclosed during deposition, "Defendant was not required to supplement its initial disclosures or answers to interrogatories ...").

Besides, sweeping interrogatories, like Interrogatory No. 4, that request information on a broad topic, such as one's "employment," without meaningful limits are inherently overbroad and unduly burdensome. For this reason as well, Sullivan's objection to Interrogatory No. 4 is well-founded and should be sustained. See, e.g., Daniels, at *3 (denying motion to compel responses to similarly broad interrogatories).

**Interrogatory Nos. 6 and 7**

In support of their motion to compel a further response to Interrogatory Nos. 6 and 7, plaintiffs assert "that communications regarding solicitations to the nursing homes and discussions leading up to a contract are clearly relevant to this action for interference with business relationships" and "the claims against the Defendants regarding the breach of Defendant Sullivan's non-compete agreement." As to this point, Sullivan has no quarrel. But the interrogatories in question are not nearly so confined.

Rather, in Interrogatory No. 7 plaintiffs ask Sullivan to provide comprehensive detailed information concerning *every* communication she had with representatives of eight nursing homes during the six plus months she worked for MedOptions in Rhode Island. Interrogatory No. 6, seeking the same details regarding communications relative to Sullivan's provision of services to these nursing homes, is effectively a duplicate of Interrogatory No. 7 since every interaction Sullivan had with these facilities during the

operative time period related in one way or another to the services she provided on behalf of MedOptions.

Simply put, "[a] demand for all communications pertaining to plaintiff's ... complaint irrespective of the nature, time and purpose of the communication is patently overbroad." Benham, 238 F.R.D. at 26 (discussing interrogatory number 19). Plaintiffs offer no explanation as to why they need to know about every single communication Sullivan had with the nursing homes she serviced, as opposed to just those, if any, pertaining to the procurement of a service contract by MedOptions, and none is apparent.[3] A simple self-serving pronouncement of relevance is plainly insufficient to meet the burden imposed by Fed. R. Civ. P. 26(b) on a party seeking discovery. See Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)("Beyond Caouette's charge that full answers to the interrogatories 'would provide the needed evidence or proof of wrongdoing,' he offers no explanation how the data he seeks but has not received bears any relevance to this matter. His 'motion for relief' is denied to the extent it seeks to compel interrogatory answers.").

Indeed, "[i]f this Court permitted discovery on this flimsy showing, then Plaintiff[s] would be entitled to limitless discovery regarding communications between [defendants] and any past or current business associate. Such a fishing expedition is not permitted under Fed. R. Civ. P. 26(b)(1)." Yangtze Optical Fibre and Cable Co., Ltd. v. Ganda, LLC, 2007 WL 674893, at *2 (D.R.I. March 1, 2007).

---

[3] To be sure, Sullivan had no involvement in MedOptions' procurement of service contracts with any former GeriCare account; she was simply assigned to those nursing homes by MedOptions. (Sullivan Dep. at p. 83).

**Interrogatory No. 9**

Sullivan responded to this interrogatory, seeking intricate details concerning the timing and extent of MedOptions' knowledge about the existence and contents of the non-competition agreement at issue in this case, by explaining that she provided a copy of the agreement to MedOptions but could not recall anything further as to the particulars. Sullivan elaborated as best she could at her deposition, detailing several discussions with MedOptions personnel regarding the agreement, but the bottom line is she does not remember precisely when she provided MedOptions with a copy, or to whom it was provided. (See Sullivan Dep. at pp. 104-05). Plaintiffs have therefore exhausted Sullivan's full knowledge as to the subject matter of Interrogatory No. 9; there is nothing further to disclose.

**Interrogatory No. 10**

Interrogatory No. 10 asks for the date Sullivan stopped servicing eight Rhode Island nursing homes on behalf of plaintiffs (information plaintiffs obviously possess) along with details concerning any and all communications Sullivan had with representatives of these facilities on the subject of her departure. Sullivan asserted a relevance objection, but responded that she "notified each of her accounts that she would be leaving GeriCare effective May 31, 2006, although she has no recollection of the specific dates." Plaintiffs probed the subject in depth at Sullivan's deposition and, therefore, by one means or another have procured all of the information Sullivan possesses on the point. (Sullivan Dep. at pp. 59-63). There is nothing further to compel.

**Interrogatory No. 11**

Plaintiffs' request, by way of Interrogatory No. 11, for contact information regarding "any company processing [Sullivan's] claims for payment from any insurer," is, as a threshold matter, confounding in that, as plaintiffs very well know, Sullivan's employer, not Sullivan, bills and collects from the insurance carriers.

At any rate, plaintiffs' contention that Interrogatory No. 11 seeks relevant information because "[t]he damages to Plaintiffs were largely in the form of patient revenues derived from insurers" and "information regarding the entities processing such claims are germane to the calculation of damages" is completely misguided. The economic damages potentially recoverable by plaintiffs in this action would be based on plaintiffs' lost profits, not defendants' gains. Home Gas Corp. of Massachusetts, Inc. v. DeBlois Oil Co., 691 F. Supp. 567, 578 (D.R.I. 1987), citing Abbey Medical/Abbey Rents, Inc. v. Mignacca, 471 A.2d 189, 195 (R.I. 1984); Long v. Atlantic PBS, Inc., 681 A.2d 249, 252 (R.I. 1996). Interrogatory No. 11, however, seeks information pertinent to the latter, not the former.

In other words, plaintiffs purport to seek information pertaining to revenues generated by MedOptions and compensation earned by Sullivan during her tenure at MedOptions in furtherance of their claim for damages. Because such information is, as a matter of settled law, irrelevant to plaintiffs' damage claim, plaintiffs' motion to compel a response to Interrogatory No. 11 must be denied. See Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 2006 WL 3025985, at *4 (D.R.I. Oct. 23, 2006)(denying motion to compel where discovery sought did not bear on legal issues at stake).

**Interrogatory No. 14**

By way of Interrogatory No. 14, plaintiffs seek the identity of all persons with knowledge of matters pertaining to this case as well as details concerning the particulars of that knowledge. In response, Sullivan objected to the extent the interrogatory calls for privileged communications with counsel but, subject to that objection, referred plaintiffs to defendants' initial disclosures. Sullivan has no obligation to provide anything further. The motion to compel should therefore be denied. Moses v. Halstead, 236 F.R.D. 667, 672-73 (D. Kan. 2006)(denying motion to compel response to interrogatory seeking identity of all persons with "knowledge concerning any of the issues raised by the pleadings" and the "subject matter" of such knowledge on the ground that defendant "has already provided in its Rule 26(a)(1) disclosures the names, telephone numbers and addresses of the individuals who are likely to have discoverable information that [defendant] may use to support its claims or defenses, ...").

**Interrogatory No. 16**

Sullivan objected on relevance grounds to this interrogatory seeking the identity of any person or entity who investigated, to any extent, plaintiffs or matters pertaining to this lawsuit, but nevertheless responded, "none other than MedOptions' counsel in connection with the defense of this lawsuit." Plaintiffs ask the Court to compel a "responsive answer" and challenge Sullivan's objection, claiming the interrogatory "does not seek privileged information, but factual information." Sullivan, however, did not assert a privilege objection, and in fact provided a complete response to this interrogatory; plaintiffs' motion to compel is therefore baseless.

**Document Request No. 2**

Plaintiffs take issue with Sullivan's response to Document Request No. 2, noting that at deposition "Sullivan testified that she had documents relating to her employment at MedOptions, including employment handbooks." The request, however, does not seek "employment handbooks" (as to which we fail to see the relevance in any event), but instead demands production of documents relating to communications between Sullivan and MedOptions "regarding any agreement or potential agreement under which Defendant Sullivan would provide services on behalf of MedOptions." Sullivan has since produced all documents in her possession that are even arguably within the scope of the actual request propounded by plaintiffs, including a copy of her offer letter. There is nothing more to turn over.

**Document Request No. 10**

Sullivan initially objected to this request for her "most recent resume and/or curriculum vitae" on relevance grounds, but has since produced the document. The matter is therefore moot.[4]

**Document Request Nos. 11 and 12**

These requests seek, respectively, "[a]ny and all personnel handbooks given to you by MedOptions" and "[a]ny and all other personnel policies and procedures distributed to you by MedOptions." In response, Sullivan denied being in possession of any such documents, but recalled at deposition that she may have received an employee handbook and, were it retained, the handbook would be stored at her sister's home in Massachusetts, specifically in the attic. (Sullivan Dep. at pp. 106-07).

---

[4] It bears noting that plaintiffs pressed the issue notwithstanding that in the course of her deposition Sullivan provided a detailed description of her education and work experience (Sullivan Dep. at pp. 18-27), information plaintiffs presumably possessed by virtue of Sullivan's employment by GeriCare.

Here, again, plaintiffs fail to explain the relevance of the documents sought. Certainly, "[a] demand for documents pertaining to employee policies, irrespective of the topic, is patently overbroad." Benham, 236 F.R.D. at 19 (discussing request number 31). Plaintiffs, moreover, do not begin to justify an Order compelling Sullivan to either travel from Connecticut to Massachusetts for the purpose of procuring an employee handbook that may or not be there or have her sister rummage through the belongings Sullivan stored in the attic.

Plaintiffs' motion to compel a further response to these requests should be denied on grounds of relevance and/or burdensomeness.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion to compel should be denied in its entirety.

Respectfully submitted,

DEFENDANTS,
ANN TAMULE a/k/a/ ANN M. SULLIVAN,
ALIAS, and MEDOPTIONS, INC.,

By their Attorneys,

/s/ Christine K. Bush
Christine K. Bush (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile
cbush@duffysweeney.com

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: December 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that the within Memorandum of Law in Support of Defendant Ann Sullivan's Objections to Plaintiffs' Motion to Compel Further Responses to Interrogatories and Requests for Production was filed through the ECF system on this 3rd day of December, 2007 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

/s/ Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\Mem in Support Sullivan Obj to Motions to Compel.DOC