UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD., d/b/a GERICARE, RONALD MARK STEWART, M.D., Plaintiffs, | : | |
| v. | : | CA 06-486 ML |
| ANN TUMULE, a/k/a ANN M. SULLIVAN, Alias, and MEDOPTIONS INC., Defendants. | : | |

**ORDER**
**RE MOTIONS HEARD**
**ON DECEMBER 20, 2007**

Before the Court are four motions filed by Human Services Consultants, Ltd., d/b/a GeriCare, and Ronald Mark Stewart, M.D. ("Plaintiffs"):

1. Plaintiffs' Motion to Compel Defendant MedOptions to Provide More Responsive Answers to Requests for Production (Document ("Doc.") #28) ("Motion to Compel MedOptions to Provide Further Production");

2. Plaintiffs' Motion to Compel Defendant MedOptions to Provide More Responsive Answers to Interrogatories (Doc. #29) ("Motion to Compel MedOptions to Provide More Responsive Answers");

3. Plaintiffs' Motion to Compel Defendant Sullivan to Provide More Responsive Answers to Requests for Production (Doc. #30) ("Motion to Compel Sullivan to Provide Further Production"); and

4. Plaintiffs' Motion to Compel Defendant Sullivan to Provide More Responsive Answers to Interrogatories (Doc. #31) ("Motion to Compel Sullivan to Provide More Responsive Answers").

A hearing was conducted on December 20, 2007, and the Court

made the rulings stated below:

## I. Motion to Compel MedOptions to Provide Further Production

**Request No. 1.** Granted to the extent that MedOptions shall submit Ms. Sullivan's personnel file to the Court for an in camera review within fourteen days of the date of this Order. The Court will then determine which documents are to be provided to Plaintiffs.

**Request Nos. 5 and 6.**[1] Granted to the extent that MedOptions shall produce all documents reflecting a communication with any of the nine nursing homes listed in Request Nos. 5 and 6 during the period from March 1, 2006, up to the date that the contract was signed between MedOptions and each nursing home. For example, if the contract between MedOptions and The Holiday nursing home was signed on June 15, 2006, MedOptions shall produce all documents reflecting communications between it and The Holiday from March 1, 2006, up to and including June 15, 2006.

MedOptions shall also produce documents reflecting a communication pertaining to the contract with any of the nine nursing homes for three months after the date of the signing of the contract between MedOptions and the nursing home. Thus, using the above example, MedOptions shall produce documents reflecting any communication with The Holiday nursing home for the period from June 15, 2006, to September 15, 2006, provided the communication pertains to the contract. By "pertains" the Court means that the document must directly relate to the contract (e.g., a cover letter accompanying payment of a monthly fee which the contract requires that the nursing home pay to MedOptions). A document which only pertains indirectly to the

[1] As Request No. 5 is fully encompassed by Request No. 6, they are addressed together.

contract does not have to be produced (e.g., a communication which reflects that services were provided or requested for a resident of the nursing home on a given date does not have to be produced in response to Requests Nos. 5 and 6).

**Request No. 7.** Granted to the extent that MedOptions must produce all documents reflecting services provided by Ms. Sullivan to residents of any of the nine nursing homes from a date thirty days prior to either a) the date the contract between MedOptions and the nursing home was executed, or b) the date the contract between MedOptions and Ms. Sullivan was executed, whichever date is earlier.[2] From the date that Ms. Sullivan first provided services to a nursing home on behalf of MedOptions, MedOptions must provide for the next thirty days the dates of such services, the total number of hours, and the amount billed for the services rendered by Ms. Sullivan at that nursing home. For example, if the first day that Ms. Sullivan provided services at The Holiday nursing home on behalf of MedOptions was June 20, 2006, for the next thirty days (i.e., until July 20, 2006) MedOptions must provide the dates on which Ms. Sullivan provided the services, the total number of hours, and the amount billed for her services at the nursing home..

Thereafter, for the next five months, MedOptions must provide monthly statements showing either the total number of hours Ms. Sullivan worked at each nursing home or the total amount billed for her services at each nursing home. Thus, using

---

[2] Although at the hearing the Court did not include this alternative formulation of the date to be used as the reference point, upon reflection the Court concludes that this formulation avoids any confusion regarding which contract constitutes the reference point. While it seems unlikely that Ms. Sullivan would have rendered services on behalf of MedOptions at any of the nine nursing homes before MedOptions signed a contract with the nursing home or before Ms. Sullivan signed a contract with MedOptions, Plaintiffs suggest that such a possibility exists. Therefore, the Court has granted this request as stated above.

the prior example, if during the period July 21 to August 20, Ms. Sullivan worked a total of fifteen hours at The Holiday nursing home for which MedOptions billed $1,500.00, MedOptions must provide a document which shows either that during the period July 21 to August 20, 2006, Ms. Sullivan worked a total of fifteen hours at The Holiday nursing home or that MedOptions billed a total of $1,500.00 for the services she rendered at that nursing home.[3]

**II. Motion to Compel MedOptions to Provide More Responsive Answers**

**Interrogatory No. 2.** Granted to the extent that MedOptions shall identify all nursing homes at which Ms. Sullivan rendered services on behalf of MedOptions and the first date and the last date on which such services were rendered at each nursing home.

**Interrogatory No. 3.** Granted to the extent that MedOptions, its officers, and directors must identify any civil or criminal or administrative action in the past five years which relates to their business or employment activity or which relates to their honesty, integrity, or truthfulness. Defendants must also disclose any felony or misdemeanor convictions within the last five years regardless of whether it relates to their business or employment activity or involves their honesty, integrity, or truthfulness.

**Interrogatory No. 4.** Granted to the extent that MedOptions is to consult with the employees who were identified by Ms. Sullivan at her deposition as having had contact with Ms.

---

[3] In order to minimize the burden on MedOptions, if it is more convenient for MedOptions to provide this information by calendar month (e.g., Aug. 1-31, Sept. 1-30, Oct. 1-31, etc., it may do so. However, if MedOptions elects to avail itself of this option, it must not leave any blank periods. For example, in the illustration stated in the text above, the period from July 16th to July 31st must still be accounted for in some manner.

Sullivan (e.g., Melissa Ferdinande and Laurel Wood) relative to her employment with MedOptions to determine what knowledge they have regarding such contacts. If any of these employees have knowledge regarding these contacts, MedOptions is to disclose it. MedOptions should specifically inquire as to the date (or approximate date) of the contact, where it took place, whether it was in person or over the telephone, how long it lasted, and whether there was any mention of the non-compete agreement which Ms. Sullivan had with Plaintiffs.[4]

**Interrogatory Nos. 6** and **7.** Granted to extent that MedOptions shall describe any communication between it and any of the nine nursing homes during the period from March 1, 2006, up to and including the date the contract between MedOptions and such nursing home was signed.

**Interrogatory No. 10.** Granted to the extent that MedOptions shall interview its knowledgeable employees, officers, and directors and ask when they first knew of the non-compete agreement and when they first saw a copy of it. MedOptions' supplemental response shall state when it first had any knowledge of the non-compete agreement and when if first received a copy of the agreement. If MedOptions had no knowledge of the non-compete agreement until September 11, 2006, they shall state this.

**Interrogatory No. 11.** Granted to the extent that MedOptions shall identify the name and address of any such company.

**Interrogatory No. 13.** Granted to the extent that MedOptions must identify all persons at MedOptions having knowledge of facts pertaining to this case and at least one person at each nursing home who would have knowledge that Ms. Sullivan provided services on behalf of MedOptions at the nursing

[4] If a prior response by MedOptions contained any inaccuracies, MedOptions should identify the inaccuracy in its supplemental response and briefly explain the reason for such inaccuracy.

home.[5] MedOptions must also identify any person it intends to call as a witness.

**Interrogatory No. 15.** Withdrawn by Plaintiffs.

## III. Motion to Compel Sullivan to Provide Further Production

**Request No. 2.** Withdrawn by Plaintiffs.

**Request No. 10.** Withdrawn by Plaintiffs.

**Request No. 11.** Granted to the extent that MedOptions will provide a copy of the personnel handbook which was provided to Ms. Sullivan (if the handbook has not changed and is the same one which would have been given to Ms. Sullivan). If the handbook has changed, Ms. Sullivan must make a reasonable effort to locate the handbook which she was given.

**Request No. 12.** Granted to the extent that MedOptions will provide the documents to which Ms. Sullivan was referring at pages 106-07 of her deposition. If MedOptions is unable to identify these documents, Ms. Sullivan must make a reasonable effort to locate them.

## IV. Motion to Compel Sullivan to Provide More Responsive Answers

**Interrogatory No. 2.** Granted to the extent that Ms. Sullivan must identify all the health care facilities at which she provided services on behalf of MedOptions. Plaintiffs have pointed out that during her deposition Ms. Sullivan identified additional facilities beyond those which she named in her initial response to this interrogatory. Ms. Sullivan must supplement her

[5] If MedOptions is uncertain whether the person identified at a given nursing home was aware that Ms. Sullivan was providing the services, MedOptions should identify a person there who was aware that MedOptions was providing such services.

answer to include all facilities which she can recall.[6] If she is unable to recall when she first started providing services at a particular health care facility, she is to state this. If she recalls any information which would be helpful in determining when she first provided services on behalf of MedOptions at a particular health care facilities (e.g., "It was one of the first facilities I went to after I started working for MedOptions so it would have been in June of 2006"), she is to provide it.

**Interrogatory No. 3.** Granted to the extent that Ms. Sullivan is to explain why her original response was that she had not been a party to any such action, but at her deposition she referred to having been a plaintiff in an automobile accident case.

**Interrogatory No. 4.** Granted to the extent that Ms. Sullivan is provide more details regarding her communications with MedOptions. Her response is deficient in that it does not state when and where the interview with Ms. Wright took place, approximately how long the interview it lasted, and whether there was any discussion of the non-compete agreement. Her response is also deficient in that at her deposition Ms. Sullivan indicated that she had communication with other MedOptions employees, but the approximate date(s), location(s), and content of those contacts are not provided. It is not sufficient to refer Plaintiffs to pages of Ms. Sullivan's deposition testimony.

---

[6] Ms. Sullivan's counsel suggested at the hearing that because Ms. Sullivan has already testified to these matters at her deposition, requiring her to supplement her answers to these interrogatories is unnecessary. Counsel is mistaken. All parties have an affirmative duty to supplement or correct their responses to interrogatories and requests for production if their original responses are not complete or correct. It appears that, contrary to what was stated in Defendants' responses, Ms. Sullivan was either not interviewed by Mary Ann Wright or was interviewed by other persons in addition to Ms. Wright. Defendants must correct any inaccuracies in their prior responses, and they must comply fully with this Order.

**Interrogatory Nos. 6 and 7.** Withdrawn by Plaintiffs.

**Interrogatory No. 9.** Granted to the extent Ms. Sullivan is to state when she first informed MedOptions of the non-compete agreement, how she communicated this information to MedOptions, and to whom this information was communicated. Her present response is deficient in that it only states that she provided a copy of the non-compete agreement to MedOptions and that she has no recollection of the date this occurred. Ms. Sullivan is to state specifically whether she told MedOptions about the non-compete agreement prior to signing a contract with MedOptions. If Ms. Sullivan is unable to recollect whether she told MedOptions about the non-compete agreement prior to signing a contract with it, she is affirmatively state this. Ms. Sullivan should also explain why her original response to this interrogatory answer does not include her conversations with Vice President Melissa Ferdinande and Laurel Wood.

**Interrogatory No. 10.** Withdrawn by Plaintiffs.

**Interrogatory No. 11.** Withdrawn by Plaintiffs.

**Interrogatory No. 14.** Granted to the extent that Ms. Sullivan must identify any person she intends to call as a witness.

**Interrogatory No. 16** Withdrawn by Plaintiffs.

Defendants shall provide supplemental responses to Plaintiffs in accordance with this Order by January 9, 2008.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
December 21, 2007