**EXHIBIT G**

# LETTER of AGREEMENT

**Agreement between** GeriCare, a Division of Human Services Consultants, Ltd., a Rhode Island Corporation, with its offices at 277 Waterman Street, Providence, Rhode Island 02906 (hereafter Provider) and Morgan Health Center, Rhode Island, (hereinafter "Center").

It is now therefore agreed that:

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 80 Morgan Ave, Johnston, RI:

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility (s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.

2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.

3. Behavioral health services.

4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.

5. Consultation to the facility staff to assist in treatment planning and behavioral management.

6. Medication evaluations by a Provider psychiatrist and/or nurse practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychological testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician (s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of insurance cards as needed and provide current information regarding insurance coverage at the beginning of each service for patients with coverage.

III. Termination of the Agreement by either party requires thirty (30) day notice in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

| | |
|---|---|
| By: Ronald M Stewart MD | By: [signature] |
| Name: Ronald M Stewart MD | Name: Lois Richard |
| Title: Medical Director | Title: Administrator |
| The Provider (GeriCare) | The Center (Morgan Health Center ) |
| Date: 3/31/03 | Date: 3/31/03 |

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__Morgan Health Center
ADDRESS:__80 Morgan Avenue
__Johnston, RI 02919-6768

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices, books, and records relating to the use and disclosure of protected health information received from, or created or received on behalf of the business associate, available to the Secretary of the US Department of Health and Human Services for purposes of determining the group's compliance with the HIPAA privacy regulations, when and if necessary, and;

8. Will, at the termination of the contract, if feasible, return or destroy all protected health information received from, or created or received on behalf of the Business Associate, the covered entity that the business associate still maintains in any form and retain no copies of such information or, in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

9. To make available protected health information for amendment and incorporate any amendments to protected health information in accordance with the HIPAA privacy regulations.

10. GeriCare shall notify the business associate of any changes in, or revocation of, permission by any patient to use or disclose protected health information, to extent that such changes may affect the business associate's use or disclosure of protected health information.

11. Both parties agree to take such action as is necessary to amend this agreement from time to time as is necessary for the covered entities to comply with the requirements of the Privacy Rule and HIPAA.

The term of this Agreement shall be effective upon signature and shall terminate when the business contract ends. GeriCare retains the right to terminate this contract in the event that GeriCare determines that the business associate has violated a material term of the contract.

Signature of Business Associate: [signature]

Printed Name of Associate: Lois Richards

Date: 1/13/04

GeriCare, A Division of Human Services Consultants, Ltd.

Signature of Medical Director: [signature]

Printed Name of Director: Ronald M Stewart MD

Date: 01/02/04

# LETTER of AGREEMENT

**Agreement between** GeriCare, a Division of Human Services Consultants, Ltd., a Rhode Island Corporation, with its offices at 277 Waterman Street, Providence, Rhode Island 02906 (hereafter Provider) and Hebert Nursing Home at Smithfield, Rhode Island (hereinafter "Center").

It is now therefore agreed that:

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at :

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility (s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.

2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.

3. Behavioral health services.

4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.

5. Consultation to the facility staff to assist in treatment planning and behavioral management.

6. Medication evaluations by a Provider psychiatrist and/or nurse practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychological testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

Pg. 2
(cont)

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician (s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of insurance cards as needed and provide current information regarding insurance coverage at the beginning of each service for patients with coverage.

III. Termination of the Agreement by either party requires thirty (30) day notice in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

| | |
|---|---|
| By: Ronald M. Stewart | By: Paul J. Hebert |
| Name: Ronald M Stewart MD | Name: PAUL J. HEBERT |
| Title: Medical Director | Title: ADM. |
| The Provider (GeriCare) | The Center ( HEBERT NURSING HOME |
| Date: 23 JAN. 2003 | Date: 1/23/03 |

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__Hebert Nursing Home
ADDRESS:__18 Log Road
__Smithfield, RI 02917

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices, books, and records relating to the use and disclosure of protected health information received from, or created or received on behalf of the business associate, available to the Secretary of the US Department of Health and Human Services for purposes of determining the group's compliance with the HIPAA privacy regulations, when and if necessary, and;

8. Will, at the termination of the contract, if feasible, return or destroy all protected health information received from, or created or received on behalf of the Business Associate, the covered entity that the business associate still maintains in any form and retain no copies of such information or, in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

9. To make available protected health information for amendment and incorporate any amendments to protected health information in accordance with the HIPAA privacy regulations.

10. GeriCare shall notify the business associate of any changes in, or revocation of, permission by any patient to use or disclose protected health information, to extent that such changes may affect the business associate's use or disclosure of protected health information.

11. Both parties agree to take such action as is necessary to amend this agreement from time to time as is necessary for the covered entities to comply with the requirements of the Privacy Rule and HIPAA.

The term of this Agreement shall be effective upon signature and shall terminate when the business contract ends. GeriCare retains the right to terminate this contract in the event that GeriCare determines that the business associate has violated a material term of the contract.

Signature of Business Associate: Paul J. Hebert

Printed Name of Associate: PAUL J. HEBERT

Date: 01/19/04

GeriCare, A Division of Human Services Consultants, Ltd.

Signature of Medical Director: Ronald M Stewart

Printed Name of Director: Ronald M Stewart MD

Date: 01/02/04

# LETTER of AGREEMENT

**Agreement between** Human Services Consultants, Ltd. a Rhode Island Corporation with its offices at 277 Waterman Street, Providence Rhode Island 02906 (hereinafter Provider) and Grandview Nursing Home, Chambers Street, Cumberland, RI 02864 (hereinafter "Grandview").

Whereas The Grandview has been advised of and has expressed a desire to utilize the services of the Provider as enumerated herein; and

Whereas the Grandview does not currently employ the services enumerated by the Provider in the within agreement

It is now therefore agreed that

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Grandview at Chambers Street, Cumberland, RI :

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Grandview regarding patient care and consultation services.

B. The Provider will visit the facility(s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.

2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.

3. Behavioral health services.

4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.

5. Consultation to the facility staff to assist in treatment planning and behavioral management.

6. Medication evaluations by a Provider psychiatrist and/or nurse practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychological testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Grandview agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician(s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Grandview also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Grandview must provide copies of Medicaid cards and provide current information regarding insurance coverage at the beginning of each month for patients with coverage.

III Termination of this Agreement by either party requires thirty (30) day notice, in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Grandview unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Grandview shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

By: Ronald Mark Stewart, MD
Name RONALD MARK STEWART, MD
Title: CEO - MEDICAL DIRECTOR
The Provider

Date: 27 SEPTEMBER 2000

By: Lori Brothers
Name: Lori Brothers
Title: Administrator
The Center Grandview Center

Date: OCTOBER 5, 2000

Grandview Center
Genesis ElderCare® Network

100 Chambers Street
Cumberland, RI 02864
Tel 401 724 7500
Fax 401 724 7543

October 10, 2000

Dr. Ronald M. Stewart
277 Waterman Street
Providence, RI 02906

Dear Dr. Stewart,

It was a pleasure to meet with you and your staff a few weeks ago. My apologies for not being able to spend more time with you.

I have reviewed and signed the enclosed contract, and am eager to have you and your team on board here at Grandview.

Should you have any questions, you may contact me at any time.

Sincerely,

Lori A. Brothers

Lori A. Brothers,
Administrator

Genesis ElderCare® is a brand name of Genesis Health Ventures, Inc.℠

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__Grandview Center
ADDRESS:__100 Chambers Street
__ Cumberland, RI 02864

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices, books, and records relating to the use and disclosure of protected health information received from, or created or received on behalf of the business associate, available to the Secretary of the US Department of Health and Human Services for purposes of determining the group's compliance with the HIPAA privacy regulations, when and if necessary, and;

8. Will, at the termination of the contract, if feasible, return or destroy all protected health information received from, or created or received on behalf of the Business Associate, the covered entity that the business associate still maintains in any form and retain no copies of such information or, in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

9. To make available protected health information for amendment and incorporate any amendments to protected health information in accordance with the HIPAA privacy regulations.

10. GeriCare shall notify the business associate of any changes in, or revocation of, permission by any patient to use or disclose protected health information, to extent that such changes may affect the business associate's use or disclosure of protected health information.

11. Both parties agree to take such action as is necessary to amend this agreement from time to time as is necessary for the covered entities to comply with the requirements of the Privacy Rule and HIPAA.

The term of this Agreement shall be effective upon signature and shall terminate when the business contract ends. GeriCare retains the right to terminate this contract in the event that GeriCare determines that the business associate has violated a material term of the contract.

Signature of Business Associate: Lori Brothers

Printed Name of Associate: Lori Brothers

Date: 1-29-04

GeriCare, A Division of Human Services Consultants, Ltd.

Signature of Medical Director: Ronald M. Stewart, M.D.

Printed Name of Director: Ronald M Stewart MD

Date: 01/02/04

# LETTER of AGREEMENT

**Agreement between** Human Services Consultants, Ltd. a Rhode Island Corporation with its offices at 277 Waterman Street, Providence Rhode Island 02906 (hereinafter Provider) and The Holiday Retirement Home, Inc. of 30 Sayles Hill Road, Manville, (Lincoln) RI 02838 (hereinafter "Center").

Whereas The Center had previously utilized the services of Arbour SeniorCare within its facility (s); and

Whereas Arbor SeniorCare has given notice of its intent to withdraw from providing services to the Center as of June 17, 2000; and

Whereas the Center is desirous of continuing the services previously provided by Arbour SeniorCare by contracting for those services with the Provider;

It is now therefore agreed that

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 30 Sayles Hill Road, Manville, RI:

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility(s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.
2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.
3. Behavioral health services.
4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.
5. Consultation to the facility staff to assist in treatment planning and behavioral management.
6. Medication evaluations by a Provider psychiatrist and/or nurse

practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychologoical testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician(s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of Medicaid cards and provide current information regarding insurance coverage at the beginning of each month for patients with coverage.

III Termination of this Agreement by either party requires thirty (30) day notice, in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

By: Ronald Mark Stewart, MD
Name: RONALD MARK STEWART, M.D.
Title: PRES. & CEO.
The Provider

Date: 19 MAY 2000

By: Robert E. Horton Jr.
Name: ROBERT E. HORTON JR.
Title: ADMINISTRATOR
The Center

Date: MAY 19, 2000

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__The Holiday
ADDRESS:__30 Sayles Hill Road
__Manville, RI 02838

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices, books, and records relating to the use and disclosure of protected health information received from, or created or received on behalf of the business associate, available to the Secretary of the US Department of Health and Human Services for purposes of determining the group's compliance with the HIPAA privacy regulations, when and if necessary, and;

8. Will, at the termination of the contract, if feasible, return or destroy all protected health information received from, or created or received on behalf of the Business Associate, the covered entity that the business associate still maintains in any form and retain no copies of such information or, in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

9. To make available protected health information for amendment and incorporate any amendments to protected health information in accordance with the HIPAA privacy regulations.

10. GeriCare shall notify the business associate of any changes in, or revocation of, permission by any patient to use or disclose protected health information, to extent that such changes may affect the business associate's use or disclosure of protected health information.

11. Both parties agree to take such action as is necessary to amend this agreement from time to time as is necessary for the covered entities to comply with the requirements of the Privacy Rule and HIPAA.

The term of this Agreement shall be effective upon signature and shall terminate when the business contract ends. GeriCare retains the right to terminate this contract in the event that GeriCare determines that the business associate has violated a material term of the contract.

Signature of Business Associate: [signature]

Printed Name of Associate: Robert B. Horton, JD

Date: 1-12-04

GeriCare, A Division of Human Services Consultants, Ltd.

Signature of Medical Director: [signature]

Printed Name of Director: Ronald M Stewart MD

Date: 01/02/04

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__Heritage Hills
ADDRESS:__80 Douglas Pike
__Smithfield, RI 02917

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

Heritage Hills Nursing Centre
80Douglas Pike
Smithfield, RI 02917
401-231-2700

February, 2003

Dear Business Associate,

Heritage Hills Nursing Centre has been in operation since July 1975. Our residents are our most important priority. They have entrusted us with their care and well-being, not to mention their privacy.

Our commitment to protecting their privacy is not new, but in order to comply with the new Privacy Rule, (better known as HIPAA), I have included a Business Associate contract for you to sign and return. We are required by Federal regulation to make all of our business associates aware of these new privacy policies

Please sign the enclosed contract and return it at your earliest convenience.

Should you have any questions, you may feel free to contact me at any time.

Sincerely,

Joyce Sormanti
Administrator

Enclosure

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE; Geri Care

Having entered into a business agreement with Heritage Hills Nursing Centre in a capacity other than as a member of the staff whereby the above mention business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizing the obligation to preserve the privacy of the protected health information, recognizing the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees;

1. To use and disclose only that information which is absolutely necessary to provide treatment for the resident or to obtain payment for health care services rendered to such person while a resident at Heritage Hills Nursing Centre, or for the proper management or administration of Heritage Hills Nursing Centre or the business associate business or service or in order to provide date aggregation services related to the health care operation of Heritage Hills Nursing Centre and;

2. Not to use or further disclose said information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement and;

4. To report to Heritage Hills Nursing Centre any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and;

5. To ensure that any agent, including subcontractors, to whim it provides information agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices relating to the use and disclosure of protected health information received from Heritage Hills Nursing Centre, or created or received on behalf of Heritage Hills Nursing Centre available to the Secretary of the U. S. Department of Health and Human Services when and if necessary and;

8. Will, at the termination of the contract, return or destroy all protected health information received from or created or received on behalf of Heritage Hills Nursing Centre or in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

Heritage Hills Nursing Centre retains the right to terminate the contract, in the event that a material term of the contract is violated.

SIGNATURE OF BUSINESS ASSOCIATE; Ronald M. Stewart, MD
DATE;

SIGNATURE OF ADMINISTRATOR; Joyce Lormanle
DATE; 2-23-03

# LETTER of AGREEMENT

**Agreement between** Human Services Consultants, Ltd. a Rhode Island Corporation with its offices at 277 Waterman Street, Providence Rhode Island 02906 (hereinafter Provider) and Ballou home for the Aged, 60 Mendon Road, Woonsocket, RI 02895 (hereinafter "Center").

Whereas The Center had previously utilized the services of Arbour SeniorCare within its facility (s); and

Whereas Arbor SeniorCare has given notice of its intent to withdraw from providing services to the Center as of June 17, 2000; and

Whereas the Center is desirous of continuing the services previously provided by Arbour SeniorCare by contracting for those services with the Provider;

It is now therefore agreed that

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 60 Mendon Road, Woonsocket, RI :

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility(s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.
2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.
3. Behavioral health services.
4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.
5. Consultation to the facility staff to assist in treatment planning and behavioral management.
6. Medication evaluations by a Provider psychiatrist and/or nurse

practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychologoical testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician(s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of Medicaid cards and provide current information regarding insurance coverage at the beginning of each month for patients with coverage.

III Termination of this Agreement by either party requires thirty (30) day notice, in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

| | |
|---|---|
| By: Ronald Mark Stewart, MD | By: Carl O Newell |
| Name: RONALD MARK STEWART, MD | Name: CARL O NEWELL |
| Title: PRES + CEO | Title: Administrator |
| The Provider | The Center |
| Date: 19 MAY 2007 | Date: 5/19/00 |

GeriCare
A Division of Human Services Consultants, Ltd.
277 Waterman Street
Providence, RI 02906
(401) 331-7777

# BUSINESS ASSOCIATE CONTRACT

NAME OF BUSINESS ASSOCIATE:__Ballou Home___________
ADDRESS:__60 Mendon Road________
__ Lincoln, RI 02865________

Having entered into a business agreement with GeriCare, A Division of Human Services Consultants, Ltd. in a capacity other than as a member of the staff whereby the above mentioned business associate performs a function or activity involving the use of disclosure of individually identifiable health information, recognizes the obligation to preserve the privacy of the protected health information to the optimal degree possible under the state and federal regulation agrees:

1. Both parties agree to use and disclose only that information which is absolutely necessary to provide treatment and services for the patient, or to obtain payment for health care services rendered to such person while a resident; or for the proper management and administration of business associate; or service to carry out the legal responsibilities; or in order to provide date aggregations services related to the health care operation of both parties;

2. Not to use or further disclose said protected health information other than permitted or required by this contract or as required by law and;

3. To use appropriate safeguards to prevent the use or disclosure of said information other than as provided for by this agreement, and;

4. GeriCare will notify the business associate of any use or disclosure of information that is not provided for by this contract as soon as such use or disclosure becomes apparent and to take immediate steps to mitigate damage of such use or disclosure and vice versa, and;

5. To ensure that any agents, including subcontractors, to whom it provides protected health information received from, or created or received by the business associate on agree to and maintain the same restriction and conditions on the use or disclosure of protected health information as the parties to the contract and;

6. To make the protected health information available as required by HIPAA regulations for the purposes of investigation, amendment and/or accounting and;

7. To make internal practices, books, and records relating to the use and disclosure of protected health information received from, or created or received on behalf of the business associate, available to the Secretary of the US Department of Health and Human Services for purposes of determining the group's compliance with the HIPAA privacy regulations, when and if necessary, and;

8. Will, at the termination of the contract, if feasible, return or destroy all protected health information received from, or created or received on behalf of the Business Associate, the covered entity that the business associate still maintains in any form and retain no copies of such information or, in the event that such return or destruction is not feasible, will extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible;

9. To make available protected health information for amendment and incorporate any amendments to protected health information in accordance with the HIPAA privacy regulations.

10. GeriCare shall notify the business associate of any changes in, or revocation of, permission by any patient to use or disclose protected health information, to extent that such changes may affect the business associate's use or disclosure of protected health information.

11. Both parties agree to take such action as is necessary to amend this agreement from time to time as is necessary for the covered entities to comply with the requirements of the Privacy Rule and HIPAA.

The term of this Agreement shall be effective upon signature and shall terminate when the business contract ends. GeriCare retains the right to terminate this contract in the event that GeriCare determines that the business associate has violated a material term of the contract.

Signature of Business Associate: Carl Newell

Printed Name of Associate: CARL NEWELL

Date: 1/14/04

GeriCare, A Division of Human Services Consultants, Ltd.

Signature of Medical Director: Ronald M. Stewart, MD

Printed Name of Director: Ronald M Stewart MD

Date: 01/02/04

# LETTER of AGREEMENT

**Agreement between** Human Services Consultants, Ltd. a Rhode Island Corporation with its offices at 277 Waterman Street, Providence Rhode Island 02906 (hereinafter Provider) and Heritage Hills Nursing Centre, Inc of 80 Douglas Avenue, Smithfield, RI 02917 (hereinafter "Center") .

Whereas The Center had previously utilized the services of Arbour SeniorCare within its facility (s); and

Whereas Arbor SeniorCare has given notice of its intent to withdraw from providing services to the Center as of June 17, 2000; and

Whereas the Center is desirous of continuing the services previously provided by Arbour SeniorCare by contracting for those services with the Provider;

It is now therefore agreed that

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 80 Douglas Avenue, Smithfield, RI:

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility(s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.

2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.

3. Behavioral health services.

4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.

5. Consultation to the facility staff to assist in treatment planning and behavioral management.

6. Medication evaluations by a Provider psychiatrist and/or nurse

practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychologoical testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician(s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of Medicaid cards and provide current information regarding insurance coverage at the beginning of each month for patients with coverage.

III Termination of this Agreement by either party requires thirty (30) day notice, in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

| | |
|---|---|
| By: Ronald Mark Stewart | By: Joyce Sormanti |
| Name: RONALD MARK STEWART, MD | Name: Joyce SORMANTI |
| Title: PRES. + CEO, | Title: Administrator |
| The Provider | The Center Heritage Hills Nursing Centre |
| Date: 19 MAY 2000 | Date: 5-19-2000 |

# LETTER of AGREEMENT

**Agreement between** GeriCare, a Division of Human Services Consultants, Ltd., a Rhode Island Corporation, with its offices at 277 Waterman Street, Providence, Rhode Island 02906 (hereafter Provider) and Pine Grove Health Center at 999 South Main Street, Pascoag, Rhode Island 02859 (hereinafter "Center").

It is now therefore agreed that:

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 999 South Main Street, Pascoag, RI 02859:

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility (s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.

2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.

3. Behavioral health services.

4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.

5. Consultation to the facility staff to assist in treatment planning and behavioral management.

6. Medication evaluations by a Provider psychiatrist and/or nurse practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychological testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

Pg. 2
(cont)

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician (s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of insurance cards as needed and provide current information regarding insurance coverage at the beginning of each service for patients with coverage.

III. Termination of the Agreement by either party requires thirty (30) day notice in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

| | |
|---|---|
| By: Ronald M. Stewart | By: Rosemarie Johnson |
| Name: Ronald M Stewart MD | Name: Rosemarie Johnson |
| Title: Medical Director | Title: Administrator |
| The Provider (GeriCare) | The Center (Pine Grove Health Center) |
| Date: 07 Feb 2002 | Date: 2/7/2002 |

# LETTER of AGREEMENT

**Agreement between** Human Services Consultants, Ltd. a Rhode Island Corporation with its offices at 277 Waterman Street, Providence Rhode Island 02906 (hereinafter Provider) and Eastgate Nursing and Recovery Center, Inc. of 198 Waterman Avenue, East Providence, RI 02914 (hereinafter "Center").

Whereas The Center had previously utilized the services of Arbour SeniorCare within its facility (s); and

Whereas Arbor SeniorCare has given notice of its intent to withdraw from providing services to the Center as of June 17, 2000; and

Whereas the Center is desirous of continuing the services previously provided by Arbour SeniorCare by contracting for those services with the Provider;

It is now therefore agreed that

I. The Provider shall provide the following enumerated services and the facility(s) owned or operated by the Center at 198 Waterman Avenue, East Providence, RI 02914 :

A. The Provider shall provide experienced clinical staff to the facility to coordinate on site mental health services. The Provider shall communicate regularly with the Center regarding patient care and consultation services.

B. The Provider will visit the facility(s) herein identified on a regular basis, as determined by need, and with the advice of the facility staff.

C. The Provider, its staff, employees and representatives shall provide the following primary functions:

1. Diagnostic Evaluations.
2. Ongoing group and individual psychotherapy as directed to patients referred by the facility.
3. Behavioral health services.
4. Documentation of services in the form of confidential reports and progress notes for each therapy contact or consultation.
5. Consultation to the facility staff to assist in treatment planning and behavioral management.
6. Medication evaluations by a Provider psychiatrist and/or nurse

practitioner who will make treatment recommendations to the primary care physician.

7. Psychological and neuropsychologoical testing.

8. Consultation during time of crisis. Facilitating admissions to appropriate hospitals as necessary.

II. The Center agrees to:

Cooperate with the Provider, its agents, employees, clinicians and consultants to the extent of providing referred residents with their authorization at mutually specified times, to be determined between the resident and the Provider's staff, by providing space for the clinician(s) to do his/her work and to make all records and reports available to the Provider with regard to the patient.

The Center also agrees to provide necessary information necessary in a timely fashion to Provider in order for Provider to obtain reimbursement for services to patients. The Center must provide copies of Medicaid cards and provide current information regarding insurance coverage at the beginning of each month for patients with coverage.

III Termination of this Agreement by either party requires thirty (30) day notice, in writing. Any such notice shall be sent to the address set forth herein unless otherwise noticed in writing.

This agreement may not be modified or amended unless done in writing, signed by both parties. There will be no obligation between the Provider or the Center unless negotiated separately and reduced to a writing, signed by both parties.

All work between the Provider and the Center shall be accomplished in accordance with the regulations of the Rhode Island Department of Mental Health, Department of Public Health, Medicare and Medicaid.

By: Ronald Mark Stewart, MD
Name: Ronald Mark Stewart MD
Title: Medical Director
The Provider: GeriCare

Date: 19 MAY 2000

By: Donna Amaral
Name: Donna Amaral
Title: Adm
The Center: EastGate

Date: 5.19.00