UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD, | : | Case. No. 1:06-cv-00486-ML-DLM |
| Plaintiffs, | : | |
| v. | : | |
| ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC., | : | |
| Defendants. | : | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT MEDOPTIONS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to LR Cv 56(a), defendant MedOptions, Inc. ("MedOptions") submits the following undisputed facts:

1. Defendant Ann Sullivan has been a registered nurse and/or nurse practitioner since 1977. (Sullivan Dep., at p. 21, line 20 through p. 23, line 8; a true copy of excerpts of the relevant portions of the Sullivan Dep. is attached hereto as Exhibit A).

2. Sullivan began working for plaintiff Human Services Consultants, Ltd. d/b/a GeriCare ("GeriCare") on or about June 3, 2002. (Sullivan Dep., at p. 26, lines 11-17).

3. As a condition of her employment by GeriCare, Sullivan executed a Provider Agreement containing a six-month non-competition covenant. (Sullivan Dep., at p. 29, line 10 through p. 31, line 23; a true copy of the Provider Agreement is attached hereto as Exhibit B).

4. While working for GeriCare, Sullivan provided psychiatric nursing care and related assessments to residents of certain nursing homes in Rhode Island, including Hebert Nursing Home ("Hebert"), The Holiday Retirement Home ("Holiday"), Heritage Hills Nursing Home ("Heritage Hills"), Ballou Home for the Aged ("Ballou"), Morgan Health Care Center, Grandview Center ("Grandview"), East Gate Nursing Center, and Haven Health of Greenville. (Sullivan Dep., at p. 36, lines 9-22).

5. The nursing homes would refer residents to Sullivan for assessment and care. (Sullivan Dep., at p. 39, lines 15-23). If Sullivan ultimately provided care to that resident, she would submit information identifying the patient who received the care to the responsible insurance provider, who would then pay GeriCare. (Sullivan Dep., at p. 37, lines 8-19).

6. On April 9, 2006, Sullivan resigned from her employment by GeriCare effective June 1, 2006. (A true copy of the letter of resignation, marked as Exhibit 5 to the Sullivan Dep., is attached hereto as Exhibit C).

7. By letter dated April 20, 2006, GeriCare notified all but one of the nursing homes that Sullivan had been servicing on GeriCare's behalf that it was terminating their service contracts effective June 1, 2006. (A true copy of those notice letters, produced by plaintiffs and attached as Exh. B to Defs' First Set of Requests for Admission and Pltfs' Response to Request Nos. 3-10, are attached hereto collectively as Exhibit D). Dr. Stewart and GeriCare sent out termination notices so quickly after Sullivan announced her intention to resign to allow the nursing homes ample opportunity to find another provider. (Stewart Dep., at p. 77, line 14 through p. 78, line 22; a true copy of excerpts of the relevant portions of the Stewart Dep. is attached hereto as Exhibit E).

8. GeriCare asked another of its staff nurse practitioners, Sharon Borges, whether she would take over responsibility for any of the nursing homes serviced by Sullivan. Ms. Borges offered to assume responsibility for one of Sullivan's nursing homes, Heritage Hills, on a limited basis -- "going in once a week after 4PM and seeing 8 to 10 patients weekly..." (a true copy of Ms. Borges' e-mail on the point, marked as Exh. D to the Stewart Dep., is attached hereto as Exhibit F) -- but the facility rejected that arrangement. (Stewart Dep., at p. 73, line 16 through p. 75, line 5; a true copy of an e-mail memorializing that rejection, marked as Exh. F to the Stewart Dep., is attached hereto as Exhibit G).

9. Beyond that, GeriCare did nothing new to recruit a nurse practitioner to fill Sullivan's spot in the week or so between learning of her decision to resign and issuing notice to the nursing homes that it was terminating their contracts. (Stewart Dep., at p. 70, line 19 through p. 72, line 10; Pltfs' Response to Request for Admission Nos. 12-18, copy attached hereto as Exhibit H).

10. At no time prior to June 1, 2006 did GeriCare propose a replacement nurse practitioner to any of the nursing homes serviced by Sullivan other than Heritage Hills. (Pltfs' Response to Request for Admission Nos. 12-18). GeriCare's service agreements with those facilities therefore terminated on June 1, 2006 per the April 20, 2006 termination notice. (Stewart Dep., at p. 78, lines 6-18).

11. Following an interview, MedOptions hired Sullivan on or about June 1, 2006. (Sullivan Dep., at p. 64, line 15 through p. 69, line 11).

12. Before joining MedOptions, Sullivan had decided to leave the private sector and initiated steps toward pursuing a religious life. (Sullivan Dep., at p. 47, line 4 through p. 50, line 5).

13. MedOptions initially assigned Sullivan to two Rhode Island facilities not previously serviced by GeriCare, namely Oakland Grove Health Care Center and Bayberry Commons, as well as Grandview, a facility that had been serviced by Sullivan on behalf of GeriCare. (Sullivan Dep., at p. 62, line 6 through p. 63, line 9 and p. 77, line 9 through p. 79, line 6; Sullivan's Supp. Response to Interrogatory No. 2, copy attached hereto as Exhibit I).

14. While working for MedOptions, Sullivan provided the same basic psychiatric nursing and assessment services to individual patients as she did while employed by GeriCare. (Sullivan Dep., at p. 82, lines 7-17).

15. After receiving GeriCare's termination notice, Grandview contacted, and eventually retained, MedOptions to replace GeriCare as a provider of on-site psychiatric services. (Stewart Dep., at p. 59, line 17 through p. 60, line 12; Wood Dep., at p. 49, line 21 through p. 51, line 2; a true copy of excerpts of the relevant portions of the Wood Dep. is attached hereto as Exhibit J). MedOptions entered into a service agreement with Grandview effective June 1, 2006. (A true copy of this service agreement is included as part of Exhibit L, see UF ¶ 17 below).

16. Sullivan played no role in MedOptions' procurement of a service agreement with Grandview. (Sullivan Aff. ¶ 2, copy attached hereto as Exhibit K; Wood Dep., at p. 50, line 8 through p. 51, line 2).

17. On or after June 1, 2006, MedOptions secured service contracts with the following former GeriCare accounts (in addition to Grandview): Hebert, Holiday, Heritage Hills and Ballou. (A true copy of these service contracts, marked as Exh. 10 to the Wood Dep., is attached hereto collectively as Exhibit L).

18. Each of these nursing homes contacted MedOptions in search of an alternative provider. (Wood Dep., at p. 43, line 12 through p. 51, line 11).

19. Sullivan played no role in MedOptions' procurement of a service agreement with Hebert, Holiday, Heritage Hills and/or Ballou. (Sullivan Aff. ¶ 3; Wood Dep., at p. 43, line 12 through p. 51, line 11).

20. Based on Sullivan's prior experience treating residents at Hebert, Holiday, Heritage Hills and Ballou, and her proximity to those locations, MedOptions assigned them to Sullivan as well. (Wood Dep., at p. 39, lines 8-19; Sullivan Dep., at p. 80, line 20 through p. 83, line 22 and p. 108, line 11 through p. 109, line 8; Sullivan's Supp. Response to Interrogatory No. 2).

21. When Grandview, Hebert, Holiday, Heritage Hills and Ballou contacted MedOptions about replacing GeriCare as the provider of on-site psychiatric services, MedOptions had no knowledge of any ongoing or expectant business relationship between those facilities and GeriCare. Prior to contracting with MedOptions, none of those facilities even identified GeriCare as their former provider of psychiatric services. (Wood Dep., at p. 45, line 3 through p. 51, line 2).

22. On October 7, 2006, Sullivan received notice that she had been accepted into a convent located in New Britain, Connecticut where, consistent with her calling, she would be able to utilize her skills and experience as a nurse in furtherance of a charitable

mission. (Sullivan Dep., at p. 49, line 4 through p. 50, line 5 and p. 112, line 16 through p. 113, line 5).

23. At Sullivan's request, MedOptions transferred Sullivan to Connecticut in January 2007 and assigned her responsibility for two nursing homes. Sullivan remained at MedOptions and worked a part-time schedule until June 2007, when she entered a convent on a permanent basis. (Sullivan Dep., at p. 111, line 10 through p. 114, line 20).

24. The forms used by GeriCare's staff to record patient information are maintained in files that are kept on-site at the nursing homes and are accessible by other health care providers as appropriate for treatment of residents. (Stewart Dep., at p. 31, line 25 through p. 34, line 24).

25. The nursing home contact point for health care service providers is typically the Administrator and/or Director of Nursing. The identities of these contact points is readily ascertainable through ordinary channels. (Stewart Dep., at p. 31, line 19 through p. 32, line 21 and p. 50, line 19 through p. 51, line 20).

26. In most cases, MedOptions and GeriCare develop relationships with potential nursing home clients through word-of-mouth referrals. (Kinell Dep., at p. 28, line 23 through p. 29, line 15; a true copy of excerpts of the relevant portions of the Kinell Dep. is attached hereto as Exhibit M; Stewart Dep., at p. 67, lines 22-24).

Respectfully submitted,

DEFENDANTS,
MEDOPTIONS, INC.

By its Attorneys,

/s/ Christine K. Bush

Christine K. Bush (#5587)
Rachelle R. Green (#5870)
DUFFY, SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: February 22, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that the within **Defendant MedOptions' Statement of Undisputed Facts** was filed through the ECF system on this 22nd day of February, 2008 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

/s/ Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\MedOptions Statement of Undisputed Facts.DOC