**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD,<br><br>Plaintiffs,<br><br>v.<br><br>ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC.,<br><br>Defendants. | : | Case. No. 1:06-cv-00486-ML-DLM |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT SULLIVAN'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to LR Cv 56(a), defendant Ann M. Sullivan ("Sullivan") submits the following undisputed facts:

1. Plaintiff Human Services Consultants, Ltd. d/b/a GeriCare ("GeriCare") employed Sullivan as a nurse practitioner from June 2002 until her voluntary resignation effective June 1, 2006. In this capacity, Sullivan was generally responsible for conducting psychological evaluations and assessments of nursing home residents at various facilities serviced by GeriCare in Rhode Island. (Sullivan Dep., at p. 34, lines 10-18, a true copy of excerpts of the relevant portions of the Sullivan Dep. is attached hereto as Exhibit A; Complaint ¶¶ 7-9).

2. Sullivan came to GeriCare with a Bachelor's Degree in Nursing, a Master's Degree in Nursing, an Advanced Graduate Certificate as an Adult Nurse Practitioner, and over 15 years of experience in the nursing field. (Sullivan Dep., at p. 18, line 6 through p. 21, line 24).

3. As a condition of her employment by GeriCare, Sullivan was required to sign a Provider Agreement containing a broad six-month non-competition covenant. (Sullivan Dep., at p. 29, line 10 through p. 31, line 23; a true copy of the Provider Agreement is attached hereto as Exhibit B).

4. By its terms, the restrictive covenant purported to bar Sullivan from working for a competing enterprise. Although GeriCare operates exclusively in Rhode Island (Complaint ¶ 5), the covenant is not geographically restricted. (Exhibit B).

5. At GeriCare's insistence, Sullivan executed a new Provider Agreement in June 2004 modifying her compensation arrangement; the restrictive covenant, however, was unaltered. (Sullivan Dep., at p. 32, line 23 through p. 33, line 21; a true copy of the new Provider Agreement is attached hereto as Exhibit C).

6. In late March or early April 2006, Alice Mellucci, the director of nursing for Hebert Nursing Home ("Hebert"), one of the facilities serviced by Sullivan on behalf of GeriCare, advised Sullivan that Hebert would be terminating its contract with GeriCare. By way of explanation, Ms. Mellucci assured Sullivan she was quite pleased with her performance as a nurse practitioner but was suspicious of possible Medicare fraud on the part of Dr. Stewart, GeriCare's owner. According to Ms. Mellucci, Dr. Stewart had submitted paperwork from Florida for services rendered to Hebert residents on a date when nobody in the facility saw him and, more importantly, documenting a supposed visit with at least one patient who was not a resident at the time. Based on this incident, Sullivan decided to leave GeriCare. (Sullivan Dep., at p. 43, line 22 through p. 45, line 12).

7. By letter to Dr. Stewart dated April 9, 2006, Sullivan resigned from GeriCare effective June 1, 2006. (A true copy of the resignation letter, marked as Exhibit 5 to the Sullivan Dep., is attached hereto as Exhibit D). Sullivan provided about seven weeks notice of her intention to resign in order to allow time for GeriCare to hire and orient a new nurse practitioner. (Sullivan Dep., at p. 57, line 11 through p. 58, line7).

8. By letters dated April 20, 2006, GeriCare notified all but one of Sullivan's assigned facilities that it was terminating their service contracts effective June 1, 2006. (A true copy of these notice letters, produced by plaintiffs and attached as Exh. B to Defs' First Set of Requests for Admission and Pltfs' Response to Request Nos. 3-10, are attached hereto collectively as Exhibit E). Dr. Stewart and GeriCare sent out termination notices so quickly after Sullivan announced her intention to resign to allow the nursing homes ample opportunity to find another provider. (Stewart Dep., at p. 77, line 19 through p. 78, line 22; a true copy of relevant excerpts of the Stewart Dep. is attached hereto as Exhibit F).

9. GeriCare asked another nurse practitioner on staff, Sharon Borges, whether she would be interested in taking over responsibility for any of the nursing homes serviced by Sullivan. Ms. Borges offered to assume responsibility for one of Sullivan's nursing homes, Heritage Hills, on a limited basis -- "going in once a week after 4PM and seeing 8 to 10 patients weekly..." (A true copy of Ms. Borges' e-mail on the point, marked as Exh. D to the Stewart Dep., is attached hereto as Exhibit G) -- but the facility rejected that arrangement. (Stewart Dep. at p. 73, line 16 through p. 75, line 5; a true copy of an e-mail memorializing Heritage Hills' rejection of Ms. Borges' proposed hours, marked as Exh. F to the Stewart Dep., is attached hereto as Exhibit H).

10. At no time prior to June 1, 2006 did GeriCare propose a replacement nurse practitioner to any of the nursing homes serviced by Sullivan other than Heritage Hills. (Stewart Dep., at p. 70, line 19 through p. 72, line 10; Pltfs' Response to Request for Admission Nos. 12-18, Exhibit I). GeriCare's service agreements with those facilities therefore terminated on June 1, 2006 per the April 20, 2006 termination notice. (Stewart Dep., at p. 78, lines 11-22).

11. Following an interview, MedOptions hired Sullivan on June 1, 2006. (Sullivan Dep., at p. 64, line 15 through p. 69, line 2). Before joining MedOptions, Sullivan had decided to leave the private sector and initiated steps toward pursuing a religious life; when those plans hit a snag she sought alternative employment. (Sullivan Dep., at p. 47, line 4 through p. 50, line 5 and p. 71, line 19 through p. 72, line 10).

12. MedOptions initially assigned Sullivan to two Rhode Island facilities not previously serviced by GeriCare, namely Oakland Grove Health Care Center and Bayberry Commons, as well as Grandview Center ("Grandview"), a facility that had been serviced by Sullivan on behalf of GeriCare. (Sullivan Dep., at p. 62, line 6 through p. 63, line 9 and p. 77, line 9 through p. 79, line 6; Sullivan's Supp. Response to Interrogatory No. 2, copy attached hereto as Exhibit J).

13. After receiving the termination notice from GeriCare, Grandview contacted, and eventually retained, MedOptions to replace GeriCare as a provider of on-site psychiatric services. (Wood Dep., at p. 49, line 21 through p. 51, line 2; a true copy of excerpts from the Wood Dep. is attached hereto as Exhibit K).

14. Sullivan played no role in MedOptions' procurement of a service agreement with Grandview. (Sullivan Aff. ¶ 2, attached hereto as Exhibit L; Wood Dep., at p. 50, line 4 through p. 51, line 2).

15. On or after June 1, 2006, MedOptions secured service contracts with the following former GeriCare accounts (in addition to Grandview): Hebert, The Holiday Retirement Home ("Holiday"), Heritage Hills Nursing Home ("Heritage Hills") and Ballou Home for the Aged ("Ballou"). (A true copy of these service contracts, marked as Exh. 10 to the Wood Dep., is attached hereto as Exhibit M).

16. Each of these nursing homes contacted MedOptions in search of an alternative provider. (Wood Dep., at p. 43, line 12 through p. 51, line 11).

17. Sullivan played no role in MedOptions' procurement of a service agreement with Hebert, Holiday, Heritage Hills and/or Ballou. (Sullivan Aff. ¶ 3; Wood Dep., at p. 43, line 12 through p. 51, line 11).

18. Based on Sullivan's prior experience treating residents at Hebert, Holiday, Heritage Hills and Ballou, and her proximity to those locations, MedOptions assigned them to Sullivan as well. (Wood Dep., at p. 39, lines 8-19; Sullivan Dep., at p. 80, line 20 through p. 83, line 22 and p. 108, line 11 through p. 109, line 8; Sullivan's Supp. Response to Interrogatory No. 2).

19. At the time Sullivan was assigned by MedOptions to cover the former GeriCare facilities she had no knowledge of any ongoing or expectant business relationship between those facilities and GeriCare. (Sullivan Aff. ¶ 4).

20. On or about October 7, 2006, Sullivan received notice that she had been accepted into a convent located in New Britain, Connecticut where, consistent with her

calling, she would be able to utilize her skills and experience as a nurse in furtherance of a charitable mission. To facilitate her transition, Sullivan requested a reassignment to facilities in the New Britain area and a reduction in hours. MedOptions obliged, transferring Sullivan to Connecticut in January 2007 and assigning her responsibility for two nursing homes. Sullivan remained at MedOptions and worked a part-time schedule until June 2007, when she entered the convent on a permanent basis. (Sullivan Dep., at p. 111, line 10 through p. 114, line 23).

21. The forms used by GeriCare's staff to record patient information are maintained in files that are kept on-site at the nursing homes and may be accessed by other health care providers as appropriate for treatment of residents. (Stewart Dep., at p. 31, line 25 through p. 34, line 24). Sullivan did not in fact appropriate GeriCare's forms for the benefit of MedOptions. (Sullivan Dep., at p. 84, lines 10-12).

22. The nursing home contact point for health care service providers to is typically the Administrator and/or Director of Nursing. The identities of these contact points is readily ascertainable through ordinary channels. According to Dr. Stewart, Dr. Stewart testified that the nursing home community in Rhode Island is small and close knit, where everyone pretty much knows one another. (Stewart Dep., at p. 31, line 19 through p. 32, line 21 and p. 50, line 19 through p. 51, line 20).

23. In most cases, GeriCare developed relationships with potential nursing home clients through word-of-mouth referrals. (Stewart Dep., at p. 67, lines 22-24).

Respectfully submitted,

DEFENDANT,
ANN M. SULLIVAN,

By her Attorneys,

/s/ Christine K. Bush

Christine K. Bush (#5587)
Rachelle R. Green (#5870)
DUFFY, SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: February 22, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the within **Defendant Sullivan's Statement of Undisputed Facts** was filed through the ECF system on this 22nd day of February, 2008 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

/s/ Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\Sullivan Statement of Undisputed Facts.DOC