**Exhibit 1**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HUMAN SERVICES CONSULTANTS, LTD., Dba GERICARE RONALD MARK STEWART MD Plaintiffs** | : | |
| **vs.** | : | **C.A. # 06-486** |
| **ANN TAMULE, aka ANN M. SULLIVAN, Alias, and MEDOPTIONS, INC.; MEDOP SERVICES, LLC; and MEDOPTIONS BEHAVIORAL HEALTH ASSOCIATES Defendants** | : | |

## AMENDED COMPLAINT

1. Plaintiff, Human Services Consultants Ltd. (hereinafter "GeriCare") is a Rhode Island corporation with its principal place of business located at 277 Waterman Street, Providence, Rhode Island. Human Services Consultants, Ltd does business for the purposes of this Complaint as GeriCare, a fictitious business name.

2. Plaintiff, Ronald Mark Stewart (hereinafter "Stewart") is a resident of the State of Rhode Island and is a physician licensed to practice medicine in the State of Rhode Island. Plaintiff Stewart is the sole owner and shareholder of Human Services Consultants Ltd. and is, in addition, the Medical Director of GeriCare.

3. Defendant, MedOptions, Inc. is, upon information and belief, a Connecticut based corporation doing business within the State of Rhode Island under the name of MedOptions, Inc. Defendant MedOp Services, LLC, is a Delaware LLC formed to manage the business of

MedOptions, Inc. MedOptions Behavioral Health Associates is a professional services organization also managed by MedOp Services, LLC, and employs professional clinicians. MedOptions, Inc., MedOp Services LLC, and MedOptions Behavioral Health Associates (hereinafter, collectively, “MedOptions”) jointly operate an enterprise conducting business in similar areas and competes for the same contracts and business as GeriCare.

4. Defendant, Ann Tamule, aka Ann M. Sullivan, (hereinafter "Sullivan") is, upon information and belief, currently a resident of the State of Connecticut however, during much of period of time set forth in this Complaint, was a resident of the State of Rhode Island. All of the current work done by Sullivan, which is the subject matter of this Complaint, was done in the State of Rhode Island.

5. GeriCare was formed in 2000 as a subsidiary of Human Services Consultants Ltd. for the purpose of providing psychiatric and mental health services to nursing facilities in and around the State of Rhode Island.

6. Stewart and GeriCare have, for a period of time in excess of 20 years provided quality care and services to nursing homes and facilities and has established both a reputation and business identity as a quality care provider of such mental health services.

7. GeriCare has provided the services to certain facilities within the State of Rhode Island for over six (6) years including but not limited to Grandview Center of Cumberland, Rhode Island, the Holiday in Lincoln, Rhode Island, Heritage Hills Nursing Center in Smithfield, Rhode Island and the Ballou Home in Woonsocket, Rhode Island.

8. That as a result of the continuous quality services provided by GeriCare to the above named nursing care centers and facilities, GeriCare established business relations with said facilities such that those facilities contracted with and continuously renewed those

contracts with GeriCare for those services for which GeriCare was paid substantial compensation by insurance carriers.

9. GeriCare, as a result of its long-standing business relationships with the aforementioned facilities, developed certain specialized business practices and procedures to both fully provide the services necessary to maintain the contracts it had with the aforementioned facilities.

10. In June of 2002, GeriCare contracted with Defendant Sullivan to provide certain services for clients of GeriCare subject to the control and supervision of GeriCare and more specifically, Stewart. That contract was renewed continuously in accordance with the terms of the contract.

11. At the time that GeriCare contracted with Sullivan, it was expressly agreed, in writing, that Sullivan would "not directly or indirectly compete with the business of the company (GeriCare) during the period of contraction" and that Sullivan would not directly "own, operate, consult to or be employed by any firm in a business substantially similar to or competitive with the present business of the Company or such business activity in which the Company may engage during the term of the agreement and for six (6) months thereafter".

12. That based upon the contract and agreements entered into between GeriCare and Sullivan, GeriCare and Stewart introduced Sullivan to the nursing care facilities identified in paragraph 7 of this complaint.

13. Based upon the contract and agreements entered into between GeriCare and Sullivan, GeriCare and Stewart provided Sullivan with critical business information and contacts that were the sole and exclusive property of GeriCare and gave her full and complete access to the business operations and proprietary information of GeriCare.

14. For a period of approximately four (4) years, Sullivan provided services to the business customers and clients of GeriCare under the business name of GeriCare and financially benefited from the business relationships and proprietary information and relationships of GeriCare and Stewart.

15. That on or about January 18, 2006, Sullivan notified GeriCare in writing that she intended to resign from providing services at Morgan Health Care Center in Johnston, Rhode Island.

16. Further on April 9, 2006, Sullivan notified GeriCare in writing that she intended to resign from GeriCare effective June 1, 2006 in order to pursue other personal interests in the Commonwealth of Massachusetts.

17. Prior to and after April 9, 2006, Sullivan informed GeriCare and Stewart of her intention to go to Massachusetts to arrange care for her sick and elderly parents, and then join a religious order. Sullivan at no time indicated that she intended to continue to provide services to the nursing and senior care facilities set forth in paragraph 7 of this Complaint.

18. That upon receipt of Sullivan's notice of termination of her services, Plaintiffs attempted to engage the services of other qualified practitioners to provide the services previously provided by Sullivan, however, Plaintiffs were unable to do so prior to discovering that Defendants maliciously diverted the business of the Plaintiffs to themselves.

19. After a diligent search for a suitable, qualified replacement for Sullivan, GeriCare was forced to resign their contracts in order to protect the mental health interests of their clients and to carry out in a timely manner the services provided to the organizations set forth in Paragraph 7, while still seeking a qualified replacement for Sullivan to continue its business with their clients set out in Paragraph 7 herein.

20. The Plaintiffs resigned from performing their services to the organizations set out in Paragraph 7 herein because Plaintiffs were attempting to comply with the needs of its clients and patients while at the same time attempting to replace Defendant Sullivan and thereby continue in its business relationships.

21. In August of 2006, Plaintiffs learned through a third party that Sullivan had lied to the Plaintiffs and was in fact continuing to provide substantially the same services to one or more of the nursing facilities that she had been providing when under contract with GeriCare.

22. Defendant Sullivan was providing the same services to the Plaintiffs' clients on behalf of the Defendant MedOptions in direct contradiction to what she had told the Plaintiffs and was done by defrauding Plaintiffs and illegally securing Plaintiffs' clients for herself and MedOptions.

23. At all times, Defendant MedOptions employed Defendant Sullivan to provide services on its behalf with full knowledge of the existence of the terms of her contract with GeriCare, and encouraged Defendant Sullivan to believe that the terms of said contract would not be enforced.

24. Upon information and belief, Sullivan had continuously provided services to Plaintiffs' clients on and after her termination date of June 1, 2006 in direct violation of the terms of her contract with GeriCare, and with the malicious intention to illegally divert Plaintiffs' business to herself and MedOptions.

25. The actions of the Defendants working in unison with the other Defendants were done with the malicious intention to interfere with Plaintiffs' business and with Plaintiffs' clients, to interfere with the non-compete agreement between Plaintiffs and Defendant

Sullivan, and to illegally take over Plaintiffs business with the organizations referred to in Paragraph 7 herein.

26. The Defendants' intentional actions played an active and direct cause of the Plaintiffs' loss of business relationships, including but not limited to the non-compete agreement between Plaintiffs and Defendant Sullivan, and was done by the Defendants with the malicious intent to damage the Plaintiffs and illegally stealing Plaintiffs' business.

27. The Plaintiffs had a business relationship known by Defendants and the Defendants, well knowing the Plaintiffs' business relationships, intentionally and maliciously interfered with those relationships belonging to the Plaintiffs, including but not limited to the non-compete agreement between Plaintiff and Defendant Sullivan and the organizations referred to in Paragraph 7 herein, thereby causing Plaintiffs to lose the business relationships that the Plaintiffs had created.

28. The malicious and intentional actions of the Defendants were intended to disrupt and destroy Plaintiffs' business relationships, resulting in great economic harm to Plaintiffs, which actions of Defendants were the proximate cause of the Plaintiffs' losing the benefit of their non-compete agreement with Defendant Sullivan, as well as substantial business due to the intentional and malicious actions of Defendants.

**COUNT I**

**BREACH OF CONTRACT**

29. Plaintiffs restate and re-allege the facts and statements set forth in the above paragraphs as if fully set forth herein.

30. Defendant Sullivan, by accepting employment from Defendants and/or work at the nursing care facilities where GeriCare had introduced her and trained her, was in breach of the

clear and written provisions of her "Provider Agreement" with GeriCare, and done in conjunction with the other Defendants to maliciously, intentionally and illegally take over Plaintiffs' business relationships.

31. The intentional and malicious acts and omissions of Defendant Sullivan and the other Defendants have injured and damaged the Plaintiffs and their business relationships.

32. Plaintiffs have suffered severe and substantial financial damages as a result of the intentional and malicious acts and omissions of Sullivan and the other Defendants.

**COUNT II**

**INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP**

33. Plaintiffs restate and re-allege the facts and statements set forth in the above paragraphs as if fully set forth herein.

34. Defendant MedOptions actions in employing Defendant Sullivan despite knowledge of the non-compete agreement, and encouraging Defendant Sullivan to accept said employment despite that non-compete agreement, constituted an interference with that non-compete agreement.

35. Defendant Sullivan's and the other Defendants' intentional and malicious acts and omissions, by employing her to provide services on Defendant MedOptions' behalf at the facilities listed in paragraph 7 of the Complaint, have resulted in the involuntary termination of Plaintiff's business relationship with said facilities.

36. Defendant Sullivan's and the other Defendants' acts and omissions were willful, deliberate and intended to damage or destroy Plaintiff's long-standing business relationships and but for Defendants' actions and interference, the Plaintiffs would still continue in their business relationships.

**COUNT III**

**INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP**

37. Plaintiffs restate and re-allege the facts and statements set forth in the above paragraphs as if fully set forth herein.

38. Defendants wrongfully, unlawfully and maliciously conspired to damage and destroy Plaintiffs' business relationships, including the non-compete agreement with Defendant Sullivan, and the business relationships with those parties identified in Paragraph 7 of this complaint.

39. The intentional and malicious interference with Plaintiffs' business relationships caused Plaintiffs great damage.

WHEREFORE, Plaintiffs pray for judgment against Defendants jointly and/or severally for the damages caused to the Plaintiffs, for the loss of potential and further income, interest, costs, attorney's fees and punitive damages.

Respectfully submitted,
Plaintiffs,
By its attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on ________________________ I sent a true copy of the within by electronic filing to all of the parties below:

Christine K. Bush, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

/s/ Vicki J. Bejma

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HUMAN SERVICES CONSULTANTS, LTD.,**<br>**Dba GERICARE**<br>**RONALD MARK STEWART MD**<br>**Plaintiffs** | : | |
| **vs.** | : | **C.A. # 06-486** |
| **ANN TAMULE, aka ANN M. SULLIVAN,**<br>**Alias, and MEDPTIONS INC.**<br>**Defendants** | : | |

**PLAINTIFFS' MOTION TO AMEND COMPLAINT**

Now comes the Plaintiff, and hereby moves to amend her complaint in the form attached hereto as Exhibit 1. In support of her Motion, Plaintiff relies on her Memorandum of Law, attached hereto and made a part hereof.

Respectfully submitted,
Plaintiff,
By her attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on ________________________ I sent a true copy of the within by electronic filing to all of the parties below:

Christine K. Bush, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

/s/ Vicki J. Bejma

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HUMAN SERVICES CONSULTANTS, LTD., Dba GERICARE RONALD MARK STEWART MD** | : | |
| **Plaintiffs** | : | |
| **vs.** | : | **C.A. # 06-486** |
| **ANN TAMULE, aka ANN M. SULLIVAN, Alias, and MEDPTIONS INC.** | : | |
| **Defendants** | : | |

COMPLAINT

I. Plaintiff, Human Services Consultants Ltd. (hereinafter "GeriCare") is a Rhode Island corporation with its principal place of business located at 277 Waterman Street, Providence, Rhode Island. Human Services Consultants Ltd does business for the purposes of this Complaint as GeriCare, a fictitious business -lame.

2. Plaintiff, Ronald Mark Stewart (hereinafter "Stewart") its a resident of the State of Rhode Island and is a physician licensed to practice medicine in the State of Rhode Island.

Plaintiff Stewart is the sole owner and shareholder of Human Services Consultants Ltd. and is, in addition, the Medical Director of GeriCare.

3. Defendant, Med0ptions Die. (hereinafter "MedOptions") is, upon information and belief, a Connecticut based corporation doing business within the State of Rhode Island under the name of Med0ptions, Inc. Med0ptions conducts business in similar areas and competes for the same contracts and business as GeriCare.

4. Defendant, Ann Tamule, aka Ann M. Sullivan, (hereinafter "Sullivan") is, upon information and belief, currently a resident of the Commonwealth of Massachusetts however, during much of period of time set forth in this Complaint, was a resident of the

. . ,. . . . . . CLERK
... OCT 17 A II: 42



State of Rhode Island. All of the current work done by Sullivan, which is the subject matter of this Complaint, is being done in the State of Rbode Island.

5. GeriCare was formed in 2000 as a subsidiary of Human Services Consultants Ltd. for the purpose of providing psychiatric and mental health services to nursing facilities in and around the State of Rhode Island.

b. Stewart and GeriCare have, for a period of time in excess of 20 years provided quality care and services to nursing homes and facilities and bas established both a reputation and business identity as a quality care provider of such mental health services.

7. GeriCare has provided the services to certain facilities within the State of Rhode Island for over six (6) years including but not limited to Grandview Center of Cumberland, Rhode Island, the Holiday in Lincoln, Rhode Island, Heritage Hills Nursing Center in Smithfield, Rhode Island and the 13ailou Home in Woonsocket, Rhode Island.

8. That as a result of the continuous quality services provided by GeriCare to the above named nursing care centers and facilities, GeriCare established business relations with said facilities such that those facilities contracted with and continuously renewed those contracts with GeriCare for those services for which GeriCare was paid substantial compensation by insurance carriers.

9. GeriCare, as a result of its long-standing business relationships with the aforementioned facilities, developed certain specialized business practices and procedures to both fully provide the services necessary mad to maintain the contracts it had with the aforementioned facilities.



10. 1n June of 2002, GeriCare contracted with Defendant Sullivan to provide certain services for clients of GeriCare subject: to the control and supervision of GeriCare and more specifically, Stewart. That contract was renewed continuously in accordance with the terms of the contract.

1-1. At the time that GeriCare contracted with Sullivan, it was expressly agreed, in writing, that Sullivan would "not directly or indirectly compete with the business of the company (GeriCare) during the period of contraction" and that Sullivan would not directly "own, operate, consult to or be employed by any firm in a business substantially similar to or competitive with the present business of the Company or such business activity in which the Company may engage during the term of the agreement and for six (6) months thereafter".

12. That based upon the contract and agreements entered into between GeriCare and Sullivan, GeriCare and Stewart introduced Sullivan to the nursing care facilities identified in paragraph 7 of this complaint.

13. Based upon the contract and agreements entered into between GeriCare and Sullivan, GeriCare and Stewart provided Sullivan with critical business information and contacts that were the sole and exclusive property of GeriCare and gave her full and complete access to the business operations and proprietary information of GeriCare.

14. For a period o£ approximately four (4) years, Sullivan provided services to the business customers and clients of GeriCare under the business name of GeriCare and financially benefited from the business relationships and proprietary information and relationships of GeriCare and Stewart.

15. That on or about Januar?'i8, 2006, Sullivan notified GeriCare in writing that she intended to resign from providing services at Morgan Health Care Center in Johnston, Rhode Island.

16. Further on April 9, 2006, Sullivan notified GeriCare in writing that she intended 4o resign from GeriCare effective June 1, 2006 in order to pursue other personal interests in the Commonwealth of Massachusetts.

17. Prior to and after April 9, 2006, Sullivan informed GeriCue and Stewart of her intention to become more involved in religious matters. Sullivan at no time indicated that she intended to continue to provide services to the nursing and senior care facilities set forth in paragraph 7 of this Complaint.

18. That upon receipt of Sullivan's notice of termination of her services, Plaintiffs attempted to engage the services of other qualified practitioners to provide the services previously provided by Sullivan, however, Plaintiffs were unable to do so prior to discovering that Defendants maliciously diverted the business of the Plaintiffs to themselves.

19. After a diligent search for a suitable, qualified replacement for Sullivan, GeriCue was forced to resign their contracts in order to protect the mental health interests of their clients and to carry out in a timely manner the services provided to the organizations set. forth in Paragraph 7, while still seeking a qualified replacement for Sullivan to continue its business with their clients set out in Paragraph 7 herein.

20. The Plaintiff resigned from perforating its services to the organizations set out in Paragraph 7 herein because Plaintiff was attempting to comply with the needs of its

clients and patients while at the same thtfe attempting to replace Defendant Sullivan and thereby continue in its business relationships.

21. In August of 2006, Plaintiffs learned ***through*** a third party that Sullivan had lied to the Plaintiffs and was continuing to provide substantially the same services to one or more of the nursing facilities that she had been providing when under contract with GeriCare.

22. Defendant Sullivan was providing the same services to the Plaintiffs' clients on behalf o£ the Defendant MedOptions in direct contradiction to what she had told the Plaintiffs and was done by defrauding Plaintiffs and illegally securing Plaintiffs' clients for herself and MedOptions.

23. Upon information and belief, Sullivan had continuously provided services to Plaintiffs' clients on and after her termination date of June 1, 2006 in direct violation of the terms of her contract with GeriCare, and with the malicious intention to illegally divert Plaintiffs' business to herself and MedOptions.

24. The actions of the Defer&mts working in unison. with the other Defendants were done with the malicious intention to interfere with Plaintiff's business and with Plaintiff's clients and to illegally take over Plaintiffs business with the organizations referred to in Paragraph 7 herein.

25. The Defendants intentional actions played an active and direct cause of the Plaintiffs loss of business relationships and was done by the Defendants with the malicious intent to damage the Plaintiffs and illegally stealing Plaintiffs' business.

26. The Plaintiffs had a business relationsbip known by Defendants and the Defendants well knowing the Plaintiffs' business relationships intentionally and



maliciously interfered with those relationships belonging to the Plaintiffs thereby causing Plaintiffs to lose the business relationships that the Plaintiffs had created.

27. The malicious and intentional actions of the Defendants were intended to disrupt and destroy Plaintiffs' business relationships, resulting in great, economic harm to Plaintiffs, which actions of Defendants were the proximate cause of the Plaintiffs losing substantial business due to the intentional and malicious actions of Defendants.

COUNT I BREACH OF

CONTRACT

28. Plaintiffs restate and re-allege the facts and statements set forth in Paragraphs One (1) through Twenty-Seven (27) as if fully set forth herein.

29. Defendant Sullivan, by continuing to work at the nursing care facilities where GeriCare had introduced her and trained her, was in breach of the clear and written provisions of her "Provider Agreement" with GeriCare, and done in conjunction. with the other Defendants to maliciously, intentionally and illegally take over Plaintiffs' business relationships.

30. The intentional and malicious acts and omissions of Defendant Sullivan and the other Defendants have injured and damaged the Plaintiffs wind their business relationships.

31. Plaintiffs have suffered severe and substantial financial damages as a result of the intentional and malicious acts and omissions of Sullivan and the other Defendants,



. COUNT II

INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP 32.

Plaintiffs restate and re-allege the facts and statements set forth in Paragraphs One (1) through Thirty-One (31) as if fully set forth herein.

33. Defendant Sullivan's and the other Defendants' intentional and malicious acts and omissions, by continuing to work at the :facilities listed in paragraph 7 of the Complaint, have resulted in the involuntary termination of Plaintiff's business relationship with said facilities.

34. Defendant Sullivan's and the other Defendants' acts and omissions were willful, deliberate and intended to damage or destroy Plaintiff's long-standing business relationships and but for Defendants' actions and interference, the Plaintiffs would $till continue in their business relationships with Plaintiffs' clients.

COUNT III INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

35. Plaintiffs restate and re-allege the facts and statements set forth in Paragraphs One (1) through Thirty-Four (34) as if fully set forth herein.

36. Defendants Sullivan, MedOptions and other Defendants wrongfully, unlawfully and maliciously conspired to damage and destroy Plaintiffs' business relationships with those parties identified in Paragraph 7 of this complaint. The intentional and malicious interference with Plaintiffs' business relationships caused Plaintiffs great damage.



WHEREFORE, Plaintiffs pray for judgment against Defendants jointly and/or severally for the damages caused to the Plaintiffs, for the loss of potential and further income, interest, costs, attorney's fees and punitive damages.

Plaintiff, Human Services CORSUINnt5, **Ltd., d/b/a GeriCare and**

Respectfully submitted,
Plaintiff,
By her attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
vbejma@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
February 25, 2008
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on ________________________ I sent a true copy of the within by electronic filing to all of the parties below:

Christine K. Bush, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

/s/ Vicki J. Bejma