**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HUMAN SERVICES CONSULTANTS, LTD.,** | : | |
| **Dba GERICARE** | : | |
| **RONALD MARK STEWART MD** | : | |
| **Plaintiffs** | : | |
| **vs.** | : | **C.A. # 06-486** |
| **ANN TAMULE, aka ANN M. SULLIVAN,** | : | |
| **Alias, and MEDOPTIONS INC.** | : | |
| **Defendants** | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANT SULLIVAN'S STATEMENT OF UNDISPUTED FACTS**

Now come the Plaintiffs, and respond to Defendant Sullivan's Statement of Undisputed Facts pursuant to LR Cv. 56.

1. Admitted, except that Sullivan had responsibilities above and beyond providing psychiatric nursing care and related assessments. Defendant Sullivan would also provide orientation for new staff members. (See Plaintiff's Motion for Summary Judgment, Exhibit A, p. 33:19-34:5, 34:25-35:4; Exhibit C, Response to Interrogatory #5, Plaintiff's SUF ¶ 18.)

2. Admitted.

3. Admitted, except that the agreement speaks for itself.

4. Admitted, except that the agreement speaks for itself.

5. Admitted, except that the testimony cited does not support the position that Plaintiffs "insisted" on a signature or in any way coerced her.

6. Denied. Sullivan, by her own admission, never discussed this event with GeriCare at any time. (Deposition of Sullivan, p. 45:13-18, appended hereto as Exhibit 1.) Neither Alice

Melucci nor anybody else from Hebert Nursing Home discussed this issue with Dr. Stewart, although throughout the entire time of Dr. Stewart's relationship with Hebert Ms. Mellucci had always been very particular and freely communicated with Dr. Stewart about any comments or concerns she might have. (Affidavit of Dr. Stewart, ¶ 14, appended hereto as Exhibit 2.) Hebert Nursing Home had not cancelled the agreement with GeriCare by the time that GeriCare had sent out the letters of April 20, 2006 regarding Sullivan's resignation. (See Plaintiff's Motion for Summary Judgment, Exhibit J; Affidavit of Dr. Stewart, ¶ 15, appended hereto as Exhibit 2.)

In any case, Defendant Sullivan has given inconsistent accounts as to her life plans at the period referenced. Her resignation letter of April 9, 2006 indicated that she would no longer be providing services to GeriCare, and also indicated that "[i]t is now time for me to move forward with my life in Massachusetts." (See Plaintiff's Motion for Summary Judgment, Exhibit H.) Roughly a week to ten days after providing that resignation, she informed Dr. Stewart that she was going to Massachusetts to take care of her aging parents and then enter a religious order. (See Plaintiff's Motion for Summary Judgment, Exhibit A, p. 68:22-70:8; Plaintiff's SUF ¶ 20.) At deposition, she denied that her parents' illness played any role in her decision to leave GeriCare, and even denied that they had had any health problems that required her to go to Massachusetts. (See Plaintiff's Motion for Summary Judgment, Exhibit B, p. 50:22-51:8; Plaintiff's SUF ¶ 21.) By spring of 2006, Sullivan had considered applying for two separate orders, but it had been determined that both were inappropriate. (See Plaintiff's Motion for Summary Judgment, Exhibit B, p. 47:6-50:5; Plaintiff's SUF ¶ 22.) Sullivan testified that at deposition, during the spring of 2006, she had made active attempts to search for work in the private sector, and had applied elsewhere before applying to MedOptions. (See Deposition of Sullivan, p. 69:4-70:1, appended hereto as Exhibit 1.)

7. Admitted, except as to the motivations for time. See our responses to #6, above.

8. Denied. The letters were sent out because GeriCare had made attempts to find a replacement for Defendant Sullivan, but realized that it could not guarantee a replacement in enough time to ensure continuity of care. Accordingly, in the interests of fulfilling its medical and ethical obligations to its patients, GeriCare sent these letters to release the nursing homes from their contractual obligations in order to deal with the possibility that GeriCare might never find a replacement. These letters specifically left open the possibility that GeriCare might find a replacement and would be able to continue to provide services. (See Plaintiff's Motion for Summary Judgment, Exhibit A, p. 79:11-24; 82:12-20; Exhibit J; Plaintiff's SUF ¶ 25.)

9. Denied. There is substantial evidence suggesting that Heritage Hills' stated reason for terminating the agreement with GeriCare was pretextual. Defendant Sullivan also testified during her deposition that Joyce Sormanti had informed her that Dr. Stewart was going to continue with the Heritage Hills patients after Defendant Sullivan left. (See Deposition of Sullivan, p. 61:2-11, appended hereto as Exhibit 1.) Therefore, replacement of Defendant Sullivan was not a pressing issue. Furthermore, Heritage Hills had never before indicated that it was necessary that a provider work during the day, nor was there any clinical reason for doing so. Heritage Hills was offered the opportunity to speak with Sharon Borges further regarding scheduling. Heritage Hills never contacted Ms. Borges, but simply terminated the agreement before the 30-day period agreed to in its contract with GeriCare by its letter dated May 31, 2006. That letter indicated that there was in fact a need for a new provider to work during the evening. (See Plaintiff's Motion for Summary Judgment, Exhibit C, Plaintiff's Responses to Interrogatories #1 and 5, See Exhibit U; Plaintiff's SUF ¶ 51; Richards Affidavit, ¶ 4-7, appended hereto as Exhibit 3.) Immediately after that period expired, Heritage Hills signed an

agreement with MedOptions – although it is clear from the face of that agreement and Heritage Hills' eagerness to drop GeriCare that Heritage Hills and MedOptions had begun discussions at least by June 1, 2006. (See Plaintiff's Motion for Summary Judgment Exhibit T, p. M-00009, "Commencement Date;" Plaintiff's SUF ¶ 51.)

10. Admitted.

11. Denied. Defendant Sullivan was offered a position as nurse practitioner on the spot during an interview with Melissa Ferdinandi and Laurel Wood taking place at the Panera Bread in Smithfield, Rhode Island. (See Plaintiff's Motion for Summary Judgment, Exhibit B, p. 72:14-73:5; Exhibit K, p. 34:24-35:4; Plaintiff's SUF ¶ 31.) At that interview, Plaintiff Sullivan had already agreed to work for MedOptions pending a reference check. (Deposition of Melissa Ferdinandi, p. 23:19-3, appended hereto as Exhibit 4.) No witness has been able to provide a date for the Panera Bread interview and this hire date. (See Deposition of Sullivan, p. 66:18-21, appended hereto as Exhibit 1; Deposition of Melissa Ferdinandi, p. 22:5:-24, appended hereto as Exhibit 2; Deposition of Laurel Wood, p. 30:3-4, appended hereto as Exhibit 5.) However, she submitted a formal application or about May 18, 2006, and was given a letter confirming the job offer on or about May 19, 2006 – the next day. (See Plaintiff's Motion for Summary Judgment, Exhibits N and O.)

Defendant Sullivan has also given inconsistent accounts as to her life plans at the period referenced. Her resignation letter of April 9, 2006 indicated that she would no longer be providing services to GeriCare, and also indicated that "[i]t is now time for me to move forward with my life in Massachusetts." (See Plaintiff's Motion for Summary Judgment, Exhibit H.) Roughly a week to ten days after providing that resignation, she informed Dr. Stewart that she was going to Massachusetts to take care of her aging parents and then enter a religious order.

(See Plaintiff's Motion for Summary Judgment, Exhibit A, p. 68:22-70:8; Plaintiff's SUF ¶ 20.) At deposition, she denied that her parents' illness played any role in her decision to leave GeriCare, and even denied that they had had any health problems that required her to go to Massachusetts. (See Plaintiff's Motion for Summary Judgment, Exhibit B, p. 50:22-51:8; Plaintiff's SUF ¶ 21.) By spring of 2006, Sullivan had considered applying for two separate orders, but it had been determined that both were inappropriate. (See Plaintiff's Motion for Summary Judgment, Exhibit B, p. 47:6-50:5; Plaintiff's SUF ¶ 22.) Sullivan testified that at deposition, during the spring of 2006, she had made active attempts to search for work in the private sector, and had applied elsewhere before applying to MedOptions. (See Deposition of Sullivan, p. 69:4-70:1.)

12. Denied. Sullivan also began working on behalf of MedOptions at The Holiday on June 6, 2006 and Heritage Hills on July 5, 2006. (See Plaintiff's Motion for Summary Judgment Exhibit Q, p. M-00089, 98; Plaintiff's SUF ¶ 40).

13. Admitted.

14. By the time that Grand View signed the contract on May 11, 2006, under the chronology provided, Defendant Sullivan may have already been offered the position by MedOptions at the Panera Bread interview. Her provision of services could have played a major role in inducing Grand View to sign on with MedOptions. At bare minimum, they enabled MedOptions to service Grand View. Additionally, it is significant that Defendant Sullivan found it worth informing Laurel Wood that she would be at Grand View in her fax of May 18, 2006. (See Plaintiff's Motion for Summary Judgment, Exhibit P.)

15. Denied. The Holiday contract, although effective June 1, 2006, was signed by Robert Horton, Administrator, on May 25, 2006. (See Plaintiff's Motion for Summary Judgment,

Exhibit T. The Contract with Heritage Hills, although not effective until July 1, 2006, was clearly already under discussion before June 1, 2006. (See our response to #8, above.)

16. Denied. The transcript pages cited do not show that Laurel Wood had any personal knowledge as to Pine Grove or Hebert Nursing Home.

17. Denied. By the time that these nursing homes had entered into contracts, Defendant Sullivan had already been given a letter confirming the offer of employment by MedOptions extended at the Panera Bread interview. (Plaintiff's Motion for Summary Judgment, Exhibit N.) Her provision of services could have played a major role in inducing the above nursing homes to sign on with MedOptions. At bare minimum, Sullivan's employment with MedOptions enabled MedOptions to service these facilities. Additionally, it is significant that Defendant Sullivan found it worth informing Laurel Wood that she would be speaking to Elaine DelSesto from the Holiday and Barbara Langshaw-Soares from Heritage Hills Nursing Center in her fax of May 18, 2006. (See Plaintiff's Motion for Summary Judgment, Exhibit P.)

18. Admitted.

19. Defendant Sullivan had discussed her work experience with GeriCare at the Panera Bread interview. (Deposition of Melissa Ferdinandi, p. 24:4-7, appended hereto as Exhibit 4; Deposition of Laurel Wood, p. 31:6-16, appended hereto as Exhibit 5.) Defendant Sullivan had also informed MedOptions at the Panera Bread interview about the noncompete agreement. (See Plaintiff's SUF, ¶ 30.) Defendant Sullivan also made specific references to The Holiday, Heritage Hills, and Grandview in a written communication to Laurel Wood of May 18, 2006. (See Plaintiff's Motion for Summary Judgment, Exhibit P.) Defendant Sullivan had also been informed of GeriCare and Dr. Stewart's longstanding relationships with the nursing homes. (See Affidavit of Ronald Stewart, ¶ 16, appended hereto as Exhibit 2.)

20. Admitted.

21. Admitted.

22. Denied. Dr. Stewart also testified that relationships within the nursing home providers developed over the years are essential to acquiring other relationships within the nursing home community that will lead to more business opportunities. (See Deposition of Dr. Stewart, p. 32:12-16, appended hereto as Exhibit 6.)

23. Denied. Dr. Stewart also testified that relationships within the nursing home providers developed over the years are essential to acquiring other relationships within the nursing home community that will lead to more business opportunities. (See Deposition of Dr. Stewart, p. 32:12-16, appended hereto as Exhibit 6.)

Respectfully submitted,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 10, 2008
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 10, 2008
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on March 10, 2008 I sent a true copy of the within by electronic filing to all of the parties below:

Christine K. Bush, Esq.
Rachelle R. Green, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

/s/ Vicki J. Bejma