**Exhibit 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD., Dba GERICARE RONALD MARK STEWART MD Plaintiffs | : | |
| vs. | : | C.A. # 06-486 |
| ANN TAMULE, aka ANN M. SULLIVAN, Alias, and MEDOPTIONS INC. Defendants | : | |

## AFFIDAVIT OF RONALD MARK STEWART

1. I am the President of Human Services Consultants, Ltd. and Medical Director of GeriCare, and have been so at all times relevant to this Affidavit. I make this affidavit on my personal knowledge.

2. I have provided psychiatric services to Heritage Hills since approximately 1991. During the period of time since 1991, the individuals who would make decisions regarding mental health care providers at Heritage Hills were Barbara Langshaw-Soares, Joyce Sormanti, and/or Joyce Sormanti's father. The Sormanti family owns Heritage Hills.

3. I have provided psychiatric services to The Holiday since approximately 1991. During the period of time since 1991, the individuals who would make decisions regarding mental health care providers at The Holiday were Judy Glass, Director of Nursing, then Robert Horton, Administrator, and Elaine DelSesto, Director of Nursing.

4. I have provided psychiatric services to Grand View since approximately 1991. During the period of time since 1991, the individuals who would make decisions regarding mental health care providers at Grand View were John Partridge, Director of Nursing, and Lori Brothers, Administrator.

5. I have provided psychiatric services to Hebert Nursing Home since approximately 2001-2002. During the period of time since 2001-2002, the individual who would make decisions regarding mental health care providers at Hebert was Alice Mellucci, Assistant Administrator. The Hebert family owns the Hebert Nursing Home.

6. I had provided psychiatric services to Morgan Health since 2001. During the period of time since 2001, the individual who would make decisions regarding mental health

care providers at Morgan were Lois Richard, Administrator, and Marie Chambers, Director of Nursing.

7. I have provided psychiatric services to Ballou since approximately 1991 . During the period of time since 1991, the individuals who would make decisions regarding mental health care providers at Ballou were Carl Newell, Administrator, Joyce Pelletier, Assistant Director of Nursing, and Mary Dupre, Director of Nursing.

8. When I gave Defendant Sullivan her orientation at the nursing homes, I provided her with training on concepts of geriatric psychiatry as applied to patients confined to nursing homes. These included information regarding the patients' ability to benefit from and tolerate psychiatric medications and potential polypharmacy issues. These concepts also included information about distinguishing between a patient's psychiatric issues and common physical problems associated with aging.

9. When I gave Defendant Sullivan her orientation at nursing homes, I also shared with her information about the specific wants and needs of the nursing homes and decision-makers described above. For example, nursing homes would differ in terms of the cultural makeup of the patients. Some nursing homes wanted to be very involved with our work, and others did not wish to be involved. I also provided Defendant Sullivan with information regarding the decision-makers' individual personalities, and introduced her to these decision-makers.

10. In her capacity as independent contractor for GeriCare, Defendant Sullivan would interact on a daily basis with the individuals responsible for making decisions regarding mental health care providers referenced above.

11. Throughout the history of GeriCare, GeriCare expended a great deal of business efforts towards developing and maintaining good will with the above-referenced nursing homes. This included not only providing first-rate service to the nursing home patients, but also in providing additional free services to the nursing homes. These included free in-services to nursing home staff on how to deal with mental health issues in their patients on a day-to-day basis. I also provided assistance in nursing home risk-management issues, such as hazards in patient rooms, competency, environmental problems, and abuse/exploitation. I would also make myself available to nursing home administrators who were having trouble with individual staff members who were in personal crisis. This would be free of charge as well.

12. When GeriCare was first established, its competitors had never offered the services of social workers. GeriCare was the first in Rhode Island to do so. These social workers provided individual counseling services that had not previously been provided by GeriCare and its competitors; the focus had been on pharmacological therapy. Defendant Sullivan was privy to this development while contracting with GeriCare.

13. During the period in which Defendant Sullivan was under contract to GeriCare, GeriCare also developed specialized business practices, such as developing log books for patients to be seen. Also, GeriCare stressed talking to the nursing home staff that most directly

deals with the patients - the nursing assistants - who could provide information based on personal observation regarding the patient's mental state. This was not commonly done.

14. At no time did Alice Mellucci of Hebert ever express any concerns to me regarding billing issues. Throughout my relationship with the Hebert Nursing Home, Ms. Mellucci has always been forthcoming about speaking about any comments or concerns she might have.

15. At no time did Hebert Nursing Home ever indicate to me that it intended to cancel our contract for any reason.

16. During the period of time that Defendant Sullivan was under contract of GeriCare, I had informed Defendant Sullivan of the longstanding nature of my business relationships.

17. GeriCare provided services to nursing homes throughout all regions of the state of Rhode Island.

18. Since this action was brought, I have been contacted by the Grand View facility. Grand View expressed dissatisfaction with the services rendered by MedOptions, and indicated that it wished to resume our earlier arrangement. GeriCare has accordingly resumed providing these services.

SIGNED OF MY OWN FREE WILL UNDER THE PAINS AND PENALTIES OF PERJURY THIS 10 th DAY OF MARCH 2008 AT
______________________.

Ronald Mark Stewart

Ronald Mark Stewart