**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HUMAN SERVICES CONSULTANTS, LTD, dba GERICARE, and RONALD MARK STEWART MD, Plaintiffs, | : | Case. No. 1:06-cv-00486-ML-DLM |
| v. | : | |
| ANN TAMULE, aka, ANN M. SULLIVAN, alias, and MEDOPTIONS INC., Defendants. | : | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTION TO THEIR MOTIONS FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Ann Sullivan ("Sullivan") and MedOptions, Inc. ("MedOptions") (collectively "defendants") submit this joint reply brief in further support of their motions for summary judgment, and more particularly in response to the objections thereto articulated by plaintiffs Human Services Consultants, Ltd. d/b/a GeriCare ("GeriCare") and Ronald Mark Stewart, M.D. ("Dr. Stewart") (collectively "plaintiffs").

**A. Enforceability of the Non-Competition Covenant**

The threshold issue presented in this case concerns the enforceability of the covenant not to compete foisted on Sullivan by GeriCare as a condition of her continued employment. Such covenants are, of course, disfavored and, as such, plaintiffs bear the burden of proving that the Provider Agreement's non-competition clause is sufficiently narrow in scope as to protect a legitimate business interest. Cranston Print Works Co. v. Pothier, 848 A.2d 213, 219 (R.I. 2004). Plaintiffs failed to meet that burden.

**1. The non-competition covenant is facially overbroad and not amenable to judicial modification.**

Plaintiffs do not dispute that the restrictive covenant at issue is overly broad on its face due to the absence of a geographical restriction. Instead, plaintiffs observe that in Durapin, Inc. v. American Products, Inc., 559 A.2d 1051 (R.I. 1989), the Supreme Court of Rhode Island adopted the partial-enforcement rule "that permits unreasonable restraints to be modified and enforced," id. at 1058, and from there presume this Court is duty-bound to scale back the covenant by inserting a boundary precluding Sullivan from working for a competitor only in Rhode Island, the lone state where GeriCare does business. But simply because Durapin "permits" the Court to modify a covenant does not mean that power must be exercised.

To the contrary, the partial enforcement rule ordinarily contemplates "a *discretionary* judicial power to modify unreasonable non-compete provisions." Cintas Corp. v. Perry, __ F.3d __, 2008 WL 442418, at *5 (7th Cir. Feb. 20, 2008)(Emphasis in original). In Cintas Corp., the U.S. Court of Appeals for the Seventh Circuit rejected the plaintiff's contention that under Ohio law a court is required to revise an overly broad non-competition covenant to render it reasonable and enforceable. Relying on an Ohio Supreme Court decision "'hold[ing] that a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests,'" the plaintiff argued that "the phrase 'will be enforced'... imposes a mandatory duty on courts to modify unreasonable restrictive covenants in employment agreements." Id. (Citation omitted). The Seventh Circuit was not persuaded, explaining that Ohio's Supreme Court also "said the rule of reasonableness '*permits* courts to fashion an employment contract reasonable between the

parties, in accord with their intention at the time of contracting...,' that 'courts are *empowered* to modify or amend employment agreements,' and 'a trial court *may* enforce a covenant 'to the extent necessary to protect an employer's legitimate interest,''" Id. (Emphasis in original)(Citations and alterations omitted).

As noted, the Supreme Court of Rhode Island likewise used permissive language in fashioning a partial enforcement rule for this State. Thus, contrary to plaintiff's assumption, the Court is not required to modify an overly expansive restrictive covenant. And, for no less than three separate and independent reasons, the Court should in this case decline to invoke its equitable authority to revise GeriCare's Provider Agreement's non-competition covenant by inserting a statewide restriction.

First, the contract at issue is particularly ill-suited for judicial modification in that there is no provision authorizing a court to do so. Surely GeriCare, as the drafter of this non-negotiable agreement, could have "included a clause ... that specifically permitted such 'blue-penciling' by the court." Braman Chemical Enterprises, Inc. v. Barnes, 42 Conn. L. Rptr. 547, 2006 WL 3859222, at *8 (Conn. Super. Dec. 12, 2006). "Instead, [GeriCare] chose to overreach by expanding the restriction to a geographical area so large that it effectively eliminates competition altogether and prevents [Sullivan] from practicing her profession [anywhere in the world], actions which are not necessary for the fair protection of [GeriCare's] legitimate business interests." Id. at *9. In the absence of a savings clause, "the approach [the Court] should take is that this non-compete is either enforceable on its own terms, or it is not." Id. And clearly it is not.

Second, plaintiffs overlook the fact that the rule of partial enforcement is not without constraints. Under Durapin, a court is empowered to modify a non-competition

covenant "*unless* the circumstances indicate bad faith or deliberate overreaching on the part of the promisee." Durapin, Inc., 559 A.2d at 1058 (Emphasis added). Here, the evidence of bad faith and overreaching is palpable. This is by no means a situation where the contract "terms are merely marginally overbearing so as to suggest that the employer simply miscalculated the extent of the restrictions required for its reasonable protection." Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1471 (1st Cir. 1992). Rather, GeriCare attempted to fetter Sullivan with a geographically unbounded ban on competitive undertakings even though GeriCare does not, and never has, done business outside Rhode Island. That plaintiffs make no attempt to justify such an overly broad restriction only confirms the complete absence of good faith. Maddog Software, Inc. v. Sklader, 382 F. Supp. 2d 268, 283-84 (D.N.H. 2005)(declining to exercise equitable power to reform non-competition covenant where plaintiff "has offered no explanation whatsoever for restricting [defendant] from competing in a geographic area encompassing the entire northeast section of the country despite the fact that [plaintiff] never had any customers in any of those states, save Pennsylvania and New Jersey.").

Third, and in any event, the Durapin court decreed that, "Even under this [partial enforcement] approach, a court will go no further than is reasonably necessary to protect a promisee's legitimate interests. *Where the promisor has not jeopardized the proprietary rights of the promisee, there is no need for the court to exercise its equity powers to modify and enforce an unreasonable noncompetition provision.*" Durapin, Inc., 559 A.2d at 1059 (Emphasis added). In Durapin, Rhode Island's Supreme Court determined that because the promisee's "only legitimate proprietary rights... were not in

any way infringed upon by [the promisor]... there was no need to modify and enforce the restrictive covenant contained in the [parties'] agreement." Id. As demonstrated immediately below, plaintiffs have failed in their effort to show the same does not hold true in the matter *sub judice*.

**2. The non-competition covenant, as applied to Sullivan, is not designed to protect a legitimate business interest.**

Plaintiffs attempt to legitimize the Provider Agreement's sweeping ban on competition by alleging that Sullivan has trampled upon GeriCare's proprietary rights with respect to confidential information, alleged "unique or novel" training, and customer relationships. The evidence, however, conclusively shows that the information plaintiffs seek to protect is not in fact confidential, the so-called "training" provided to Sullivan -- actually, an orientation -- was by no means "unique or novel," and Sullivan had nothing to do with GeriCare's loss of clientele.

**a. Confidential Information**

Plaintiffs' contention that GeriCare's forms are confidential is predicated on the self-defeating argument that "unless and until one had undertaken to provide psychiatric services in the stead of GeriCare, one could not as a matter of law have gained access to those files, as they are protected by stringent medical confidentiality laws." (Pltfs' Obj. [Doc. No. 57] at p. 7). But of course such statutory protection is for the benefit of the patients, not the service provider.

Be that as it may, the critical point here, conceded by plaintiffs, is that once filled out by the treating medical professional, GeriCare relinquishes control over the forms. Significantly, plaintiffs do not contend that the nursing homes are subject to a confidentiality agreement that would preclude dissemination of GeriCare's forms as the

facility sees fit (within the parameters of the law). And simple logic teaches that one cannot classify as "confidential" documents or information left in the hands of an unrestricted third-party. New England Surfaces v. E.I. Du Pont de Nemours and Co., 517 F. Supp. 2d 466, 496-97 (D. Me. 2007)(trade secret status did not attach to information shared with third-parties who were not bound by confidentiality agreement); Baystate Technologies, Inc. v. Bentley Systems, Inc., 946 F. Supp. 1079, 1092 (D. Mass. 1996)(same). See generally Perritt, Jr., Trade Secrets, A Practitioner's Guide, at p. 122 (PLI 1994)("Confidentiality agreements are generally necessary when trade secrets are disclosed to customers and suppliers.")(Footnote omitted).

Plaintiffs admit, moreover, that a competitor, like MedOptions, that replaces GeriCare as the provider of psychiatric care at a particular facility would gain access to GeriCare's forms in the ordinary course of treatment. By definition, then, these forms are not confidential in the sense that Sullivan's familiarity with the documents would justify shackling her with a non-competition covenant. APG, Inc. v. MCI Telecommunications Corp., 436 F.3d 294, 307 (1st Cir. 2006)(applying Rhode Island law and concluding that technical information that "was obtainable within normal business channels" was not a trade secret).

**b. Training**

According to plaintiffs, "GeriCare provided [Sullivan] with the training to deal with its very specialized area -- that is, the unique mental health needs of nursing home patients." (Pltfs' Obj. [Doc. No. 57] at p. 7). Dr. Stewart admitted, however, that the "training" provided to Sullivan was in the nature of an orientation that lasted no more than a few days. (Stewart Dep., at pp. 61-62; a copy of relevant excerpts from the

Stewart Dep. is attached hereto as Exhibit A). This is not the sort of "unique or novel" education courts recognize as sufficient to justify restrictions on one's employability.

While Rhode Island law is not well-developed on the point, precedent from other jurisdictions that take a similar approach to non-competition covenants teaches that, "In order for training to be a protectible business interest, it must be extraordinary. Training is classified as extraordinary when it exceeds 'what is usual, regular, common. or customary in the industry in which the employee is employed.'" Dyer v. Pioneer Concepts, Inc., 667 So.2d 961, 964 (Fla. 2d DCA 1996)(Citations omitted). See also Brown & Brown, Inc. v. Ali, 494 F. Supp. 2d 943, 953 (N.D. Ill. 2007)(training that is customary in the industry was not extraordinary and specialized); Ride the Ducks, L.L.C. v. Duck Boat Tours, Inc., 2005 WL 670302, at *12-13 (E.D. Pa. March 21, 2005)(same); Moore Business Forms, Inc. v. Foppiano, 181 W. Va. 305, 382 S.E.2d 499, 501-02 (1989)(same).[1]

"At most, the training which [Sullivan] received from [plaintiffs] enabled [her] to improve [her] skills to become a more effective [nurse practitioner]. Toward this end, 'an employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment.'" Asters v. Management Search of Rhode Island, Inc., 1988 WL 1017330, at *4 (R.I. Super. July 7, 1988)(Citation omitted).

---

[1] Notably, even training of an extraordinary and specialized nature will not justify a non-competition covenant unless it is "combined with other factors weighing in favor of a protectable business interest such as trade secrets, confidential information, or special customer relationships." 7's Enterprises, Inc. v. Del Rosario, 111 Hawai'i 484, 143 P.3d 23, 32 (2006). Here, as Sullivan demonstrated in her summary judgment submission, no such interests are implicated.

c. **Goodwill**

Finally, plaintiffs make much of the fact that GeriCare spent considerable time and effort nurturing relationships with its customers in order to generate goodwill. (Pltfs' Obj. [Doc. No. 57] at pp. 8-11). But this simply begs the relevant question. Plaintiffs may possess a legitimate interest in protecting customer goodwill, but that would not lend validity to a restrictive covenant precluding Sullivan from working for a competitor unless Sullivan was in a position to exploit the relationships developed with GeriCare's accounts. As a nurse practitioner, however, Sullivan simply accepted assignments to particular nursing homes and played no role in the solicitation or marketing of services.

Yet plaintiffs insist Sullivan introduced MedOptions to the various nursing homes she had been servicing on behalf of GeriCare and, as a result, those facilities ultimately contracted with MedOptions. They rest their case on a fax cover sheet Sullivan sent to Laurel Wood of MedOptions along with her formal job application that contained contact information for administrators at The Holiday Nursing Home and Heritage Hills Nursing Center. Even though one of those administrators was specifically identified in the application as a reference, plaintiffs nevertheless characterize the cover sheet as some sort of a smoking gun proving that Sullivan delivered these facilities to MedOptions. (Pltfs' Obj. [Doc. No. 57] at pp. 14-16). To draw that conclusion, however, plaintiffs rely on speculation, not evidence.

In her summary judgment affidavit, Sullivan confirmed she had absolutely no involvement in MedOptions' solicitation of any nursing home she formerly serviced on behalf of GeriCare. Sullivan's testimony in this respect was fully corroborated by Ms. Wood, who recounted at deposition that each of these facilities contacted MedOptions

and Sullivan did not accompany her on any marketing calls or otherwise participate in the process. (Wood Dep. at pp. 43-51; a copy of relevant excerpts of the Wood Dep. is attached hereto as Exhibit B).

Plaintiffs could easily have tested the credibility of this testimony by deposing the nursing home administrators, but they elected not to do so. This is hardly surprising in view of the fact that Dr. Stewart personally contacted many of these administrators in an effort to ascertain precisely how they ended up contracting with MedOptions, and none of them indicated Sullivan was the key, or was even involved. (Stewart Dep. at pp. 55-60). A fax cover sheet bearing a pair of names and telephone numbers of employment references is not evidence to the contrary, and certainly cannot overcome the sworn testimony of Sullivan and Ms. Wood, not to mention Dr. Stewart's admission that his own investigation turned up nothing that would corroborate plaintiffs' conspiratorial assumptions.

"To block summary judgment, the party having the burden of proof on a critical issue must present evidence on that issue that is 'significantly probative,' not 'merely colorable.' [GeriCare] has not satisfied that requirement here; it has offered only prognostications woven from the gossamer strands of speculation and surmise, unaccompanied by any significantly probative evidence [suggesting Sullivan appropriated GeriCare's customer goodwill]. That is inadequate to make out a genuine issue of material fact." Alliance of Automobile Manufacturers v. Gwadosky, 430 F.3d 30, 40-41 (1st Cir. 2005)(Citations and footnote omitted).

### B. Plaintiffs Offer No Evidence That Defendants Tortiously Interfered With GeriCare's (Abandoned) Customer Relationships[2]

Plaintiffs' claims against Sullivan for tortious interference with business advantage fail in large measure for the same basic reasons that Sullivan's non-competition covenant is unsupported by a legitimate business interest in protecting customer goodwill. That is, plaintiffs have failed to adduce evidence sufficient to prove that Sullivan in any way helped MedOptions procure service agreements with GeriCare's former accounts.

As for the tort claims against MedOptions, they are foreclosed by the privilege that attaches to an alleged act of interference undertaken in furtherance of business competition. Pascale Service Corp. v. International Truck and Engine Corp., 2007 WL 2905622, at *4 (D.R.I. Oct. 1, 2007). Contrary to plaintiffs' contention (Pltfs' Obj. [Doc. No. 57] at p. 19), the privilege is not eviscerated merely because Sullivan was bound by a non-competition agreement at the time she was hired by MedOptions and assigned to service certain former GeriCare accounts, especially since, as demonstrated above, the covenant is overly broad and hence unenforceable as a matter of Rhode Island law.

To overcome the privilege, plaintiff bears the burden of proving "legal malice— an intent to do harm without justification..." Belliveau Building Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000)(Citations omitted). This "form[] of malice require[s] a showing that the defendant acted not with the intent to benefit itself but rather with an intent to harm the plaintiff." Pharmacy Services, Inc. v. Swarovski North America Ltd.,

[2] Plaintiffs have moved for leave to amend their Complaint to add a second theory of recovery sounding in tort, *to wit*, that defendants allegedly tortiously interfered with the Provider Agreement's restrictive covenants. Although that motion remains pending, plaintiffs nevertheless claim they are entitled to summary judgment on the point. Far from being a winner for plaintiffs, the proposed claim actually fails as a matter of law. Defendants so demonstrated in their objection to the motion for leave to amend, to which the Court is referred for summary judgment purposes.

2006 WL 753055, at *5 (D.R.I. March 21, 2006). Nothing in the record supports the far-fetched notion that MedOptions hired Sullivan and pursued business opportunities with GeriCare's former accounts for the illicit purpose of harming plaintiffs.

Indeed, plaintiffs argue way too much in asserting that "there is still an issue of fact as to whether Defendant Sullivan and MedOptions acted in concert to gain GeriCare's business" and "even if Defendant Sullivan did not engage in solicitation of the nursing homes, she at least enabled Defendant MedOptions to service the nursing homes." (Pltfs' Obj. [Doc. No. 57] at p. 19). Such strategic hiring with an eye towards attracting targeted business prospects in furtherance of economic gain is precisely the sort of competitive initiative the privilege recognized by the Rhode Island Supreme Court in Belliveau Building Corp. is designed to protect. See, e.g., Barkan v. Dunkin' Donuts, Inc., 520 F. Supp. 2d 333, 342 (D.R.I. 2007)(because defendant's actions were undertaken in an effort to protect a bona fide business interest, tortious interference claim would not lie); Pharmacy Services, Inc., at *5 (defendant's termination of authorized dealer agreement was not tortious where defendant "terminated the relationship in order to increase its own Internet sales and not simply to harm [plaintiff].")(Citation omitted).

In the end, plaintiffs' tortious interference claims are grounded entirely in conjecture and supposition about a possible conspiracy among defendants to pilfer GeriCare's accounts. "Summary judgment cannot be defeated, however, 'by relying on improbable inferences, conclusory allegations or rank speculation.'" Torrechi-Hernández v. General Electric Co., __ F.3d __, 2008 WL 615905, at *4 (1st Cir. March 7, 2008)(Citation omitted).

Respectfully submitted,

DEFENDANTS,
MEDOPTIONS, INC. and ANN SULLIVAN

By Their Attorneys,

/s/ Christine K. Bush

Christine K. Bush (#5587)
Rachelle R. Green (#5870)
DUFFY, SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

and

Lawrence Peikes
Admitted *Pro Hac Vice*
lpeikes@wiggin.com
WIGGIN AND DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600-telephone
(203) 363-7676 -facsimile

Dated: March 21, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the within **Defendants' Reply to Plaintiffs' Objection to Their Motion for Summary Judgment** was filed through the ECF system on this 21st day of March, 2008 and will be sent electronically to the below named counsel who are registered participants identified on the Notice of Electronic Filing:

Stephen M. Robinson, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

Vicki J. Bejma, Esq.
The Law Offices of Stephen M. Robinson
155 South Main Street
Suite 402
Providence, RI 02903

/s/ Christine K. Bush
Christine K. Bush

H:\Clients\MedOptions\Tamule\Pleadings\USDC RI\Reply in Support of MSJ.DOC