**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **HUMAN SERVICES CONSULTANTS, LTD., dba GERICARE RONALD MARK STEWART MD** <br> **Plaintiffs** | : | |
| **vs.** | : | **C.A. # 06-486** |
| **ANN TAMULE, aka ANN M. SULLIVAN, Alias, and MEDPTIONS INC.** <br> **Defendants** | : | |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

Pursuant to the Order of this Court, Plaintiffs submit their Pretrial Memorandum.

## I. PROOF

This matter originally sprang from a non-compete agreement entered into by Plaintiffs and Defendant Sullivan. Defendant Sullivan had been providing services as a nurse practitioner under contract with Plaintiffs, who were in the business of providing specialized geriatric psychiatric services to nursing home patients across the State. Said agreement provided that Defendant Sullivan would not engage in or be employed by any business competing with Plaintiffs for a period extending up to six months after she left Plaintiffs. Despite having signed that agreement, Defendant Sullivan accepted employment from Defendant MedOptions for substantially the same services as she had provided to the Plaintiffs, and began working for Defendant MedOptions immediately after her last day of employment for Plaintiffs. In fact, Defendant Sullivan was providing those services at the very nursing homes at which she had worked on behalf of the Plaintiffs. Those nursing homes had adopted Defendant MedOptions as their new service provider after many years of service by the Plaintiffs.

Plaintiffs' original complaint consisted of three separate counts. Count I of Plaintiff's Complaint alleged that Defendant Sullivan breached her non-compete agreement by accepting employment with Plaintiffs' competitor, Defendant MedOptions. Furthermore, Count II of Plaintiffs' Complaint alleged that Defendant Sullivan and Defendant MedOptions, working in concert, tortiously interfered with Plaintiffs' advantageous business relationships. Count III further alleged that Defendant Sullivan and Defendant MedOptions had conspired with one another to tortiously interfere with Plaintiffs' advantageous business relationships.

After the time period allotted for discovery, the parties filed cross-motions for summary judgment. By decision dated June 30, 2008, this Court granted Defendant Sullivan's Motion for Summary Judgment on Count I. This Court granted Defendant MedOptions' Motion for Summary Judgment on Count II of the Plaintiffs' claim of tortious interference except insofar as that claim related to Heritage Hills Nursing Home. This Court denied Defendant Sullivan's Motion for Summary Judgment on Count II. Both Defendants' Motions for Summary Judgment on Count III, the conspiracy claims, were denied.

**A. Tortious Interference with Business Relationship**

The heart and soul of Plaintiffs' wrongful interference claims lie in the non-compete agreement with Defendant Sullivan. Plaintiffs are fully prepared to show that the non-compete agreement itself was valid. A non-compete agreement is enforceable under Rhode Island law, provided that the agreement 1) is ancillary to an otherwise valid transaction or relationship; 2) supported by adequate consideration; and 3) there exists a legitimate interest that the provision is designed to protect. See Durapin v. American Products, Inc., 559 A.2d 1051, 1053 (R.I. 1989). The agreement must be reasonable. See id. This Court has found that a non-compete covenant protected a legitimate interests where an employer had provided an employee training in a

unique or novel service. See Dial Media v. Schiff, 612 F.Supp. 1483, 1489 (D.R.I. 1985). Non-compete covenants may also be enforced where aimed at protecting goodwill. See id. This is particularly so when the promisor is in a position to develop a "special relationship" can be with clients. That "special relationship" is formed where the promisor has become aware of the special and otherwise unknown needs of the customer. See Durapin v. American Products, Inc., 559 A.2d 1051, 1057 (R.I. 1989), *citing* Rego Displays, Inc. v. Fournier, 379 A.2d 1098, 1101 (1977). Plaintiffs can show that they both provided Defendant Sullivan with extensive training regarding novel services, that is, in Plaintiffs' highly specialized practice of providing mental health care to geriatric patients confined to nursing homes. This training encompassed both the unique clinical and administrative aspects of that practice. Furthermore, Defendant Sullivan, as a care provider, had the opportunity to learn of the special needs of Plaintiffs' clients. Indeed, Plaintiffs themselves gave her specific instruction in the peculiarities of each nursing home.

Finally, the agreement itself was far from unreasonable in scope. It has been recognized in Rhode Island law that one of the legitimate concerns to be protected by a non-compete agreement is the opportunity for a business to prove itself to its existing clients once a key employee leaves. See Block v. Vetcor of Warwick, LLC, 2000 WL 1634784, *6 (Williams, J.), *citing* Concord Orthopedics Professional Ass'n v. H. James Forbes, M.D., 702 A.2d 1273, 1276 (N.H. 1997). Six months would not be an unreasonable amount of time for an intensely service-oriented business such as that conducted by Plaintiffs to be given a chance to prove itself. Indeed, in the case of Block, a non-compete agreement of two years was not deemed unreasonable. Although there was no geographical limitation to the agreement, it is obvious that it only encompassed the Rhode Island area, because that was the only area in which Plaintiffs provided services.

Defendant Sullivan clearly breached her agreement by accepting employment from Defendant MedOptions, and, concurrently, engaged in tortious interference with Plaintiffs' business relationships. In order to establish a wrongful interference with economic advantage, one must establish the existence of a business relationship or expectancy, knowledge by the interferor of the relationship or expectancy; an intentional act of interference; proof that the interference caused the harm sustained; and damages to the plaintiff. See L.A. Ray Realty v. Town Council of the Town of Cumberland, 698 A.2d 202, 207 (R.I. 1997).

Plaintiffs can show the existence of a business relationship and/or the expectancy of the same with its nursing home clients, at least as to Defendant Sullivan. These nursing homes had been receiving services from the Plaintiffs for many years, in some cases, decades. Plaintiffs can also show that Defendant Sullivan knew or should have known of these relationships, in that she had been working for Plaintiffs for some time.

Defendant Sullivan can be shown to have deliberately interfered with the Plaintiffs' business relationships by wrongful means, and caused damage to the Plaintiffs as a result. There is substantial evidence showing that Defendant Sullivan engaged in a deliberate pattern of deceiving the Plaintiffs. Defendant Sullivan notified Plaintiffs on or about April 9, 2006 that she was leaving their employ effective June 30, 2006. She told the Plaintiffs that she was leaving their employ to go to Massachusetts and care for her sick and aging parents, and then join a religious order. After making some effort to find a replacement, Plaintiffs sent out notices to all of the nursing homes serviced by Defendant Sullivan, with the exception of Heritage Hills, indicating that they were released from their contracts with Plaintiffs. This was done in the interests of ensuring continuity of care in the event that no replacement could be found in time.

Given the longstanding business relationships, Plaintiffs would have had an excellent chance of keeping these clients if it could have found a replacement.

Defendant Sullivan in fact did not go to Massachusetts as she had told Plaintiffs. There is substantial evidence already on the record demonstrating that her stated motives for going to Massachusetts never existed. Defendant Sullivan has admitted that her parents were not in need of her care, nor had she any firm intention of joining any religious order at the time that she gave notice. Instead, she took a job with Defendant MedOptions in violation of her non-compete agreement, while she was in fact still working for Plaintiffs. There is also written evidence to the effect that while she was still working for Plaintiffs, she had directly contacted Plaintiffs' clients about her move to Defendant MedOptions, and notified Defendant MedOptions about these contacts, and that these clients shortly signed on with Defendant MedOptions as their new provider. Defendant Sullivan continued to provide her usual services to these nursing homes, in some cases only days after she left Plaintiffs.

Defendant Sullivan's actions interfering with the Plaintiffs' business relationships were clearly wrongful, and caused the damages to the Plaintiffs. The mere acceptance of employment for Defendant MedOptions violated the specific terms of her non-compete agreement. That agreement covered the period during her contract with Plaintiffs, and six months thereafter. The fact that she went to work for Defendant MedOptions enabled Defendant MedOptions to obtain Plaintiffs' nursing home clients, in that she could offer the continuity of her care. Defendant Sullivan's pattern of untruthfulness and deceitfulness towards the Plaintiffs regarding her reasons for leaving undergirds the inference that Defendant Sullivan had all along intended to take Plaintiffs' clients to a competitor. It is also far from coincidental that all of Plaintiffs' former clients would end up with contracts with Defendant MedOptions.

Defendant MedOptions can be shown to have tortiously interfered with Plaintiffs' contract with Heritage Hills. Heritage Hills was not one of those nursing homes that Plaintiffs released from their contract, and therefore the Plaintiffs had a clear expectation of a continued business relationship. Heritage Hills was one of those nursing homes with whom Defendant Sullivan discussed her impending move to Defendant MedOptions – and then reported back to Defendant MedOptions that she had had that discussion with Heritage Hills. Heritage Hills then chose to end the agreement with Plaintiffs as of Defendant Sullivan's last day of work with the Plaintiffs, and sign on with Defendant MedOptions. Heritage Hills attempted to end the agreement without even honoring the 30-day cancellation period contained in the contract with the Plaintiffs. Furthermore, Heritage Hills' stated reasons for dispensing with Plaintiffs' services were clearly pretextual. The clear inference is that Defendant MedOptions and Defendant Sullivan acted in concert to divert this nursing home client from the Plaintiffs.

Defendant MedOptions' actions were also clearly wrongful. There is extensive evidence that Defendant MedOptions' management knew perfectly well that Defendant Sullivan had a non-compete agreement, but specifically encouraged Defendant Sullivan to disregard it in order to work for Defendant MedOptions. When an employer hires an employee despite the employer's knowledge that the proposed employment will violate the employee's non-compete agreement, that hire is recognized as a species of tortious interference. See Gorman Publishing Co. v. Stillman, 516 F.Supp. 98, 106 (N.D. Ill. 1981); Corroon & Black of Illinois, Inc. v. Magner, 494 N.E.2d 785 (Ill.App. 1986).

**B. Conspiracy**

A conspiracy is defined in the same manner under civil law as it is under criminal law. See Paradis v. Landfredi, 1996 R.I. Super. LEXIS 97, *citing* 15A C.J.S. Conspiracy, § 1(2) (1967

& Supp. 1995) n.6. A conspiracy is defined as the agreement of one or more parties to perform an unlawful act, or to engage in a lawful act for an unlawful purpose. See State v. Gilman, 291 A.2d 425, 432 (R.I. 1972). It is well-established that one can be a liable as a member of a conspiracy without being guilty of the underlying offense. See Salinas v. United States, 522 U.S. 52, 64, 118 S.Ct. 469, 477, 139 L.Ed.2d (1997)

The evidence clearly demonstrates that Defendant MedOptions and Defendant Sullivan had agreed to interfere with Plaintiffs' business relationships. Plaintiffs rely in part upon the fact that Defendant MedOptions had been making attempts at gaining inroads into the Rhode Island market for some time. However, the Rhode Island nursing homes are a close-knit business community, and personal contacts were therefore essential. Defendant Sullivan, who already had a relationship with many of these nursing homes through her employment with the Plaintiffs, was thus a valuable addition to Defendant MedOptions' staff. In fact, Defendant MedOptions was so eager to obtain Defendant Sullivan's services that it hired her on the spot, at her initial job interview, without having completed its usual background or reference checks.

Plaintiffs also rely upon the fact that Defendant MedOptions and Defendant Sullivan deliberately ignored the non-compete agreement. Defendant MedOptions not only specifically encouraged Defendant Sullivan to ignore that agreement. This agreement was of course designed to protect Plaintiffs' business relationships. Additionally, as we discussed above, there is extensive evidence that Defendant Sullivan notified many of Plaintiffs' clients of her intention to work for Defendant MedOptions, and then in turn informed Defendant MedOptions that she had been discussing her move with these nursing home clients.

## II. PROBABLE LENGTH OF TRIAL

Plaintiffs anticipate that the trial will last five to seven days.

Respectfully submitted,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
August 13, 2008
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
August 13, 2008
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on August 13, 2008, I sent a true copy of the within via the Court electronic filing system:

Christine K. Bush, Esq.
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325

/s/ Vicki J. Bejma